UNITED STATES of America,
Plaintiff–Appellee,

v.

Cecil FERGUSON, Defendant–Appellant.

No. 91–6316.

United States Court of Appeals,
Sixth Circuit.

Reargued June 16, 1993.

Decided Nov. 1, 1993.

Christopher E. Cotten, Asst. U.S. Atty. (argued and briefed), Memphis, TN, for plaintiff-appellee.

Eugene A. Laurenzi (argued and briefed), Agee, Allen, Godwin, Morris & Laurenzi, Memphis, TN, for defendant-appellant.

Before: MERRITT, Chief Judge; and KEITH, KENNEDY, JONES, MILBURN, GUY, NELSON, RYAN, BOGGS, NORRIS, SUHRHEINRICH, SILER, and BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

Defendant Cecil Ferguson appeals the district court's denial of his motion to suppress a firearm and evidence of drug trafficking found, following a traffic stop, in a car in which he was a passenger. Ferguson argues that the district court erred in finding that the traffic stop was not unlawfully pretextual and in not suppressing the evidence because of the unlawful stop. For the reasons discussed below, we adopt a new test in this Circuit for determining when a traffic stop should be deemed unlawfully pretextual. Applying this test to the stop of defendant Ferguson, we AFFIRM the district court's denial of his motion to suppress.

## I.

At 1:30 a.m. on October 18, 1990, police officer Ernie Writesman of the Memphis Police Department was making a routine check on the parking lot of the Royal Oaks Motel in Memphis, Tennessee, in a marked patrol car. As Writesman was talking to a security guard, defendant Ferguson pulled into the parking lot in a 1977 blue Lincoln. He was followed by Leonard Lester, who was driving a 1977 Ford. Ferguson and Lester parked opposite each other near room 203. Ferguson got out of the Lincoln and began walking down the sidewalk abutting a row of rooms, toward the back of the parking lot. As Ferguson approached Writesman and the security guard, the security guard asked Ferguson if he could help him. Ferguson said that he was looking for room 212. The guard gave Ferguson directions, and Ferguson proceeded on.

Officer Writesman then got into his patrol car and drove toward the front of the motel, passing by the Ford, which was still sitting in the parking lot. Writesman observed Lester, who was still in the Ford, lie down across the front seat of the car in an apparent attempt to hide. His suspicions aroused, Writesman went across the street and positioned his patrol car so that he could observe the two individuals.

Writesman saw Ferguson get into the Ford with Lester and drive to a spot in front of a room other than room 212. Ferguson went into room 410 and came out about five to seven minutes later. The two then drove back around to the Lincoln. Ferguson took a gray briefcase from the Lincoln and got back into the Ford, and the men drove back to room 410. Ferguson went back into room 410 with the briefcase, came out about two to five minutes later still carrying the briefcase, and got back into the Ford. The two left the parking lot and drove down the street, leaving the Lincoln behind.

Officer Writesman followed the Ford and upon noticing that there was no visible license plate on the car—a violation of a Memphis traffic ordinance—Writesman pulled the car over. Lester, who was driving, got out of the Ford and approached Writesman. Writesman first asked Lester for his driver's license, which Lester gave him, and then Writesman asked what the two men were doing. Lester explained that he had been at a motel with a young lady for about an hour, and he asked why Writesman was stopping him. The record does not reflect whether Writesman answered Lester's question. Apparently, Writesman did not ask about the license plate or issue any citation for failure to display a license plate, but instead put Lester into the back of his squad car and called for a back-up. After the back-up arrived, Writesman approached the Ford, where he saw Ferguson, still sitting in the passenger seat, with a .22 automatic pistol lying next to him on the front seat of the car. Writesman then arrested Ferguson. In searching the car and the briefcase incident to Ferguson's arrest, police found drug notes, plastic bags, scales with white powder on them, and a plastic bag containing envelopes of cocaine. It was not until later that Writesman discovered that the license plate for the car had been lying on the rear shelf of the car, although it was not visible from the outside of the car unless one were standing next to the rear window.

Ferguson was indicted by a grand jury for possession with intent to distribute about 33.5 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1), and carrying or using a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). He filed a motion to suppress the firearm and the evidence of drug trafficking, claiming that the stop was pretextual and therefore illegal. At the hearing before a magistrate judge, Officer Writesman testified that the "number one" reason he stopped the car was because of the individuals' activity at the motel, although he stated that he also stopped it for the license plate violation. The magistrate judge recommended that the

motion be denied, and the district court adopted the magistrate's recommendation over Ferguson's objections.

The district court found that Ferguson was seized when Officer Writesman pulled him over and that the activities observed by the officer at the motel were enough to support a stop and detention based on reasonable suspicion. The court also found that the stop was not pretextual, noting that a pretextual stop occurs when the police use a legal justification to make the stop in order to search a person or place in connection with an unrelated crime as to which they lack reasonable suspicion. The district court held that pretext must be determined through an objective assessment of the officer's actions and that this stop was not pretextual under either of the approaches that courts have employed to make this assessment. Under the first approach, Writesman was authorized to stop the vehicle for a license tag violation and had probable cause to believe that such a violation had occurred. Under the second approach, Writesman routinely stopped cars that did not have visible license plates, and there was no evidence that a reasonable officer would not have stopped the car. Therefore, it denied the motion to suppress.

The district court then accepted a negotiated plea agreement that permitted Ferguson to enter a conditional plea of guilty to the drug charge, while reserving the right to appeal the denial of his motion to suppress. Pursuant to the agreement, the government dismissed the firearm charge. Ferguson was sentenced to 168 months of imprisonment.

Ferguson appealed his conviction and sentence, and a panel of this Court reversed the conviction and vacated the sentence because it found that the traffic stop was unlawfully pretextual. We vacated the panel's decision in order to address en banc this issue: "Where an officer has probable cause to make a traffic stop, and also has motivations that are unrelated to the traffic stop such as an intent to investigate suspicious activity, may the stop be deemed unconstitutional because it is pretextual?" [1]

---

1. We need not address the district court's finding that the officer had reasonable suspicion to support the stop based on his observances at the motel, because, as discussed below, we conclude

## II.

### A.

Whether a traffic stop violates the Fourth Amendment must be evaluated in the same manner as other alleged violations of that Amendment: by undertaking "an objective assessment of an officer's actions in light of the facts and circumstances then known to him. The language of the Amendment itself proscribes only 'unreasonable' searches and seizures." *Scott v. United States*, 436 U.S. 128, 137, 98 S.Ct. 1717, 1723 (1978). And "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Id.* at 138, 98 S.Ct. at 1723.

The circuits have generally taken two approaches to the required objective assessment of the officer's actions. One of those approaches, commonly referred to as the "would" test, requires a determination of "whether a reasonable officer *would* have made the seizure in the absence of illegitimate motivation." *United States v. Smith*, 799 F.2d 704, 708 (11th Cir.1986). The Tenth Circuit has followed the lead of the Eleventh Circuit and adopted the "would" test, holding that *Smith*'s reasoning that a court should ask

> "not whether the officer *could* validly have made the stop, but whether under the same circumstances a reasonable officer *would* have made the stop in the absence of the invalid purpose" ... properly preserves the Supreme Court's requirement of an objective inquiry into Fourth Amendment activity and provides meaningful judicial review of discretionary police action.

*United States v. Guzman*, 864 F.2d 1512, 1517 (10th Cir.1988) (citations omitted) (quoting *Smith*, 799 F.2d at 709).

The courts that use the "would" test have held that the officer's subjective intent is not relevant to the objective assessment of his actions. These courts have found relevant to

that assessment such factors as the kind of duty the arresting officer was on at the time he made the stop; the words and actions of the officer both before and after he made the stop, *see Smith*, 799 F.2d at 710 ("[W]e ... therefore are not concerned with [the officer's] subjective intent.... What turns this case is the overwhelming objective evidence that [the officer] had no interest in investigating possible drunk driving charges: he began pursuit before he observed any 'weaving' and, even after he stopped the car he made no investigation of the possibility of intoxication."); and the general police practice or routine for enforcing the violation for which the stop was made, *see Guzman*, 864 F.2d at 1518 ("If police officers in New Mexico are required to and/or do routinely stop most cars they see in which the driver is not wearing his seat belt, then this stop was not unconstitutionally pretextual at its inception.... Conversely, if officers rarely stop seat belt law violators absent some other reason to stop the car, the objective facts involved in this stop suggest that the stop would not have been made but for a suspicion that could not constitutionally justify the stop.").

In contrast to these circuits' "reasonable officer test," several circuits have taken the view, often characterized as the "could" test, that a stop is valid if the officer "could" have stopped the car in question for a suspected traffic violation. *See United States v. Rusher*, 966 F.2d 868, 876 (4th Cir.) (comparing cases), *cert. denied,* —— U.S. ——, 113 S.Ct. 351, 121 L.Ed.2d 266 (1992). "[S]o long as the police are doing no more than they are legally permitted and objectively authorized to so [sic], [the resulting stop or] arrest is constitutional." *United States v. Trigg*, 878 F.2d 1037, 1041 (7th Cir.1989) (on interlocutory appeal); *see also United States v. Trigg*, 925 F.2d 1064, 1065 (7th Cir.1991) (it is enough that officer had probable cause to arrest and lawfully effectuated the arrest), *cert. denied,* —— U.S. ——, 112 S.Ct. 428, 116 L.Ed.2d 449 (1991); *United States v. Maejia*, 928 F.2d 810, 815 (8th Cir.1991) (officer's

---

that Officer Writesman had probable cause to stop the vehicle based on the license plate violation.

engaging in ongoing surveillance of car did not prohibit him from stopping car for traffic violation); *United States v. Cummins*, 920 F.2d 498, 501 (8th Cir.1990) ("stop remains valid even if the officer would have ignored the traffic violation but for his other suspicions"), *cert. denied*, —— U.S. ——, 112 S.Ct. 428, 116 L.Ed.2d 448 (1991); *United States v. Causey*, 834 F.2d 1179, 1184 (5th Cir.1987) ("so long as police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry"); *United States v. Hawkins*, 811 F.2d 210, .213 (3d Cir.1987) ("legality of stop must be judged by the objective facts known to the seizing officers rather than by the justification articulated by them"; pretext irrelevant if stop otherwise valid), *cert. denied*, 484 U.S. 833, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987); *cf. Rusher*, 966 F.2d at 876 (saving for another day whether to apply *Smith* "reasonable officer" test or "legally authorized" test because stop met both tests), *cert. denied*, —— U.S. ——, 113 S.Ct. 351, 121 L.Ed.2d 266 (1992).

Most cases applying the "could" test have turned on the fact that the officer in that case was authorized by law to make a traffic stop and *in fact* did make the stop at least in part because of a suspected traffic violation. And, while cases such as *Guzman* and *Smith* might appear to portray it differently, the "could" test has not been interpreted by any circuit as meaning that a stop can be justified merely by an after-the-fact determination that the officer theoretically could have stopped the car for a traffic violation, although he had not noticed at the time of the stop that the violation had occurred.

**B.**

This Circuit has repeatedly maintained that the test to be utilized in determining whether a stop is pretextual is the "would" test as set out by the Eleventh Circuit in *Smith*, 799 F.2d at 709.[2] However, the facts

in the Sixth Circuit cases that deal with claims that a stop was pretextual are more like the facts in *Guzman*, where the traffic violation that precipitated the stop was not disputed. And a review of the Sixth Circuit cases demonstrates that each time we have been confronted with a traffic stop made on the basis of probable cause, unlike the *Guzman* court, we have found that the stop was not unconstitutional.

In *United States v. Pino*, 855 F.2d 357 (6th Cir.1988), *amended to add concurrence*, 866 F.2d 147 (6th Cir.1989), *cert. denied*, 493 U.S. 1090, 110 S.Ct. 1160, 107 L.Ed.2d 1063 (1990), the first of several Sixth Circuit cases in which a traffic stop was attacked as pretextual, we distinguished the facts but relied on the reasoning of *Smith*. There, we addressed a situation in which a Tennessee state trooper traveling along an interstate highway spotted a rental car with Florida license plates, which he knew to be common among drug couriers. *Pino*, 855 F.2d at 358. When the driver saw the police car, he braked and swerved onto the shoulder (almost hitting the guardrail), swerved back onto the highway without signalling, drifted partially into the left lane, and then slowed down in an obvious attempt to avoid passing the trooper. The trooper arrested the driver for an illegal lane change, and the stop and arrest led to the discovery of cocaine. We affirmed the district court's finding that the stop was not pretextual, holding that the trooper's observation of the swerving gave him probable cause to believe that the defendant had violated a motor vehicle statute:

> There is nothing in the record before us to indicate that the district court's factual finding that [the trooper's] observations gave him probable cause to believe that Pino had committed a traffic offense and that this was the reason for the stop is clearly erroneous. Accordingly, we need not decide the question whether, if there is adequate reason for a stop based on a

---

2. In *Smith*, the court held that the officer making the stop had neither reasonable suspicion based on the drug courier profile, nor probable cause to believe that any traffic violation had occurred. *Smith*, 799 F.2d at 709. The objective assessment of the officer's actions—the "would" test—was directed at the issue of whether the officer

"could have conducted a *Terry*-stop to investigate the possibility of drunk driving." *Id.* However, the Sixth Circuit, as well as other circuits, has treated the case as if the "would" test had been applied where the officer had probable cause to make a traffic stop.

traffic violation, it is necessary that it also be shown that this was in fact the reason for the stop.

*Id.* at 361.

Since *Pino,* this Court has addressed the question of pretextual stops in several cases, but no clear picture has emerged as to what factors should be considered in determining whether a reasonable officer would have made the stop in question. In *United States v. Crotinger,* 928 F.2d 203 (6th Cir.1991), a case in which an officer operating a speed trap stopped a car going 66 in a 55 m.p.h. zone, the officer approached the car and noticed pills on the floor of the car and the aroma of marijuana. Despite the fact that there was no evidence that the officer was engaged in any activity other than catching speeders, we nonetheless addressed, in terms of the reasonable officer test from *Smith* and *Pino,* the defendant's claim that the stop was pretextual. We held that the stop was "objectively reasonable" and not pretextual because the speeding violation clearly constituted probable cause for the stop and there was no evidence that the car in which defendant was riding was stopped for any reason other than the speeding. *Crotinger,* 928 F.2d at 206.

*United States v. Dunson,* 940 F.2d 989 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1488, 117 L.Ed.2d 629 (1992), involved the stop of a speeding vehicle by a police officer strictly enforcing the traffic laws in order to interdict drug traffickers. It is not entirely clear what test we applied in *Dunson.* However, we cited and distinguished *Smith,* and held that a speeding violation, albeit a minor one, had been committed in the presence of the officer. Because the defendant had not shown that the officer was using questionable criteria in deciding which speeders to stop, we found that the stop was not constitutionally "unreasonable." *Dunson,* 940 F.2d at 993.

In *United States v. French,* 974 F.2d 687 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1012, 122 L.Ed.2d 160 (1993), we again used the language of objective reason-

ableness in finding valid and non-pretextual the traffic stops of a rental truck and a car that a Memphis police officer suspected were traveling in tandem with a third vehicle on an interstate highway.[3] An officer of the Tennessee Highway Patrol eventually stopped the car on the basis of the report of the Memphis police officer that it was speeding. A different officer of the Highway Patrol, who was aware of the Memphis police officer's suspicions that the vehicles were traveling in tandem but was not aware that the police officer had observed the vehicles speeding, stopped the truck after observing it operating erratically. We held that under these circumstances both stops were objectively reasonable: the truck was stopped because the Highway Patrolman had seen a traffic violation when he saw the truck operating erratically, and the car was in fact speeding and thus "it could have been objectively reasonable for an officer to stop the vehicle to issue a ticket to the operator." *Id.* at 691. The fact that the officers stated that they were partially motivated by suspicions of drug activity did not make the traffic stops pretextual because

> the officers had a reasonable belief, considering in totality the observations made by individual officers, that the [car] was travelling in linkage with the truck and that the occupants were somehow acquainted or associated together. We also find that the officers acted in an objectively reasonable manner because the [car] was, in fact, speeding.

*Id.* at 692.

In each of these cases, we have cited to the reasoning in *Smith* and used the trappings of the reasonable officer, but have concluded, not that a reasonable officer would have made the stop in the particular circumstances of that case, but that the officer in question had probable cause to make the traffic stop and, therefore, the stop was not illegal. The unavoidable inference to be drawn from our cases is that an officer who makes a traffic stop based on probable cause acts in an objectively reasonable manner. As

---

**3.** Although the opinion does not expressly say so, the officer apparently suspected that because these vehicles appeared to be travelling in tan-

dem, they were probably involved in the transportation of drugs.

a result, there is no Sixth Circuit case helpful to the police or the courts in determining what, if anything, is necessary to validate a traffic stop if probable cause is not enough under the "would" test. Because we conclude that probable cause is enough, we adopt a new test for this Circuit.

### C.

We address today only the issue of whether a traffic stop, which is supported by probable cause but motivated—at least in part—by suspicions inadequate to support a stop, may be held to be unconstitutional because it is pretextual. We find that neither the *Smith* test of whether a reasonable officer *would* have stopped the car for a traffic violation but for the invalid motive (or its variations as found in the pretextual stop cases decided in this Circuit), nor the language of the standard set out by other circuits of whether the police officer *could* have stopped the car for a traffic violation is satisfactory in determining this issue. At least insofar as the "would" test might be applied to the circumstances of a stop based upon probable cause, we find it difficult to distinguish, for example, between the officer's subjective intent and the "objective evidence" of the officer's actual interest in investigating the kind of offense for which he made the stop. *See Smith,* 799 F.2d at 710–711. We also suspect that *Guzman*'s focus on the "objective evidence" of the general police practice is simply an aggregation of the subjective intentions of officers in the regions. As for the "could" test, as we have indicated, no circuit adopting that test has expressly said that a stop can be justified merely by an after-the-stop determination that the officer theoretically could have stopped the car for a traffic violation, although he did not notice at the time of the stop that a violation had occurred. However, in our view, some of the language utilized by the courts that subscribe to the "could" test is sufficiently imprecise to leave it susceptible of such a reading.

■ We hold that so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment. *See United States v. Trigg,* 925 F.2d 1064, 1065 (7th Cir.) (it is enough that officer had probable cause to arrest and lawfully effectuated the arrest), *cert. denied,* —— U.S. ——, 112 S.Ct. 428, 116 L.Ed.2d 448 (1991). We focus not on whether a reasonable officer "would" have stopped the suspect (even though he had probable cause to believe that a traffic violation had occurred), or whether any officer "could" have stopped the suspect (because a traffic violation had in fact occurred), but on whether this particular officer in fact had probable cause to believe that a traffic offense had occurred, regardless of whether this was the only basis or merely one basis for the stop. The stop is reasonable if there was probable cause, and it is irrelevant what else the officer knew or suspected about the traffic violator at the time of the stop. It is also irrelevant whether the stop in question is sufficiently ordinary or routine according to the general practice of the police department or the particular officer making the stop.

■ We note that this probable cause determination, like all probable cause determinations, is fact-dependent and will turn on what the officer knew *at the time he made the stop.* Under this test, it is clear that the courts may not determine whether there was probable cause by looking at events that occurred after the stop. If an officer testifies at a suppression hearing that he in fact did not see the traffic violation or did not have probable cause to believe a violation had occurred, but only discovered after the stop or the arrest that the suspect had committed a traffic violation, a court could not find that probable cause existed. Such a stop would be unreasonable under the Fourth Amendment. Conversely, if the facts known to the officer at the time of the stop were sufficient to constitute probable cause to believe that a traffic violation had occurred, a reviewing court may not look at the officer's ordinary routine, or his conduct or conversations that occurred before or after the stop to invalidate the stop as pretextual.

We believe that by using this standard, we will better achieve the objective assessment of the officer's actions required by the Supreme Court. *See Maryland v. Macon,* 472 U.S. 463, 470, 105 S.Ct. 2778, 2783, 86

L.Ed.2d 370 (1985) (objective assessment of officer's actions necessary); *United States v. Villamonte–Marquez,* 462 U.S. 579, 584 n. 3, 103 S.Ct. 2573, 2577 n. 3, 77 L.Ed.2d 22 (1983) (fact that officers acted on tip about drugs did not make boarding boat for inspection of documents unlawful); *Scott v. United States,* 436 U.S. 128, 137–38, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978) (subjective intent not relevant). We also will avoid some of the problems inherent in the "would" and "could" tests. By adopting this standard, we make explicit that which was simply an inference under our prior cases: traffic stops based on probable cause, even if other motivations existed, are not illegal.

We accomplish several things by holding that a traffic stop, supported by probable cause, of a vehicle as to which the officer also has suspicions of more nefarious activity, is not unreasonable because it is based at least in part upon other motivations. We ensure that the validity of such stops is not subject to the vagaries of police departments' policies and procedures concerning the kinds of traffic offenses of which they ordinarily do or do not take note. We ensure as well that those who are engaged in more nefarious activity are not insulated from criminal liability for those activities simply because a judge determines that the police officer who executed the traffic stop, had he been the mythical reasonable officer, would not have stopped them for the traffic offense that they in fact committed. We ensure that law enforcement officers who see actual violations of the law, even minor ones, are not left to ponder whether their actions in enforcing the law are appropriate. Finally, we ensure that the courts leave to the legislatures the job of determining what traffic laws police officers are authorized to enforce and when they are authorized to enforce them.

### D.

In applying this standard to this case, the only question is whether Officer Writesman had probable cause to stop Ferguson and Lester based on the traffic violation. We find that clearly he did.

Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir.1990). As this Court noted in *United States v. Barrett,* 890 F.2d 855 (6th Cir.1989):

> The establishment of probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates,* 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 2335 n. 13, 76 L.Ed.2d 527 (1983). As noted in *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983):

>> [P]robable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief" ... that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required. (citations omitted).

> Moreover, the existence of probable cause should be determined on the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). This totality of the circumstances analysis includes a realistic assessment of the situation from a law enforcement officer's perspective.

*Id.* at 861.

■ Driving with no visible license plate is a violation of Memphis City Ordinance § 21–269. Officer Writesman testified that he noticed before he stopped the car that it did not have a visible license plate and that he recognized that this was a violation of law. Therefore, Officer Writesman clearly had probable cause to stop the vehicle for the traffic violation of driving with no visible license plate. It is irrelevant that the vehicle in fact had a drive-out tag lying on the back shelf of the car, because the ordinance makes it an offense to drive without a "visible" license plate, and the vehicle did not have a visible license plate. It is also irrelevant what a reasonable officer would have done, what Of-

ficer Writesman did before or after the stop, or what other reasons Writesman gave for the stop. It likewise is immaterial that Writesman testified that he normally stops vehicles that do not display a license plate or drive-out tag. Because Writesman had probable cause to believe that a traffic violation had occurred, the stop was not unlawful. We need not inquire any further into the circumstances surrounding the stop. Therefore, we must affirm the denial of Ferguson's motion to suppress and affirm Ferguson's conviction.

### III.

Because we have found that the district court did not err in denying the motion to suppress and that the conviction must be affirmed, we must address Ferguson's second argument on appeal: the district court erred in sentencing him as a career offender because his prior convictions resulted from guilty pleas that were not voluntarily entered and were therefore constitutionally invalid.

■ Sitting en banc, we recently held that a district court may permit a federal criminal defendant to attack at a sentencing hearing the validity of previous state court convictions that will enhance the defendant's sentence under the Guidelines. *See United States v. McGlocklin,* 8 F.3d 1037 (6th Cir. 1993) (en banc). However, as was the case in *McGlocklin,* we find that the defendant has failed to establish that his prior convictions were constitutionally infirm.

The district court indicated at sentencing that it believed that the burden of showing voluntariness was on the government and that the Guidelines did not authorize it to permit collateral attacks on state convictions as part of the sentencing proceedings. Nonetheless, the court permitted defendant Ferguson to attack his prior state convictions collaterally and gave him the opportunity to present whatever evidence he had to support those attacks. Ferguson presented nothing at the hearing except to read his objections concerning his prior convictions and to respond to his counsel's leading questions about his understanding of his rights at the time he entered the pleas. The judge made it abundantly clear on the record that he did

not believe Ferguson's testimony concerning the claimed constitutional infirmities of those convictions and that he would find that the government had met the burden of demonstrating that the guilty pleas in those state prosecutions were voluntary.

The presumption of regularity that attaches to final judgments dictates that Ferguson had the burden to produce credible evidence that the prior pleas were involuntary. *Parke v. Raley,* — U.S. —, 113 S.Ct. 517, 524, 121 L.Ed.2d 391 (1992). The district court discredited Ferguson's testimony at sentencing about the nature of his prior convictions. Thus, Ferguson did not carry his burden. Although the district court was incorrect in its allocation of the burden, we find no error in the court's finding that the government would have carried its burden of demonstrating that the pleas were voluntarily entered. Accordingly, we find that the district court did not err in sentencing Ferguson as a career offender.

### IV.

For these reasons, we **AFFIRM** the district court's denial of the motion to suppress, **AFFIRM** Ferguson's conviction, and **AFFIRM** the district court's sentencing of Ferguson as a career offender.

KEITH, Circuit Judge, dissenting.

I disagree with the majority's determination that the stop at issue was not unlawfully pretextual. More importantly, I am disturbed by the majority's adoption of a new standard to determine when a police stop is unlawfully pretextual. Therefore, I respectfully dissent from Parts II and III of the Court's opinion, and write separately to address those portions. In addition, I join Judge Jones' dissent.

I have no dispute with the majority's account of the facts in this case. Part I of the Court's opinion, however, fails to mention that it was only upon Writesman's review of photographs from the scene of the traffic stop that he realized there was a drive out tag lying on the shelf of the rear window of the Ford. This fact indicates Writesman's

failure to investigate the absence of a visible license plate on the Ford.

The majority correctly states that "[t]his Circuit has repeatedly maintained that the test to be utilized in determining whether a stop is pretextual is the 'would' test as set out by the Eleventh Circuit in *Smith,* 799 F.2d at 709." (Majority Opinion at 390) (footnote omitted). This Circuit adopted the *Smith* test in *United States v. Pino,* 855 F.2d 357, 361 (6th Cir.1988), *cert. denied,* 493 U.S. 1090, 110 S.Ct. 1160, 107 L.Ed.2d 1063 (1990). In *United States v. Ferguson,* 989 F.2d 202 (6th Cir.1993), this Court applied the *Smith* test to determine whether the stop at issue was unlawfully pretextual. The *Ferguson* Court, Judge Boggs dissenting, held that Writesman's stop and search of Lester's vehicle was unlawfully pretextual:

> Ferguson contends that his Fourth Amendment right against unreasonable searches and seizures was violated because Officer Writesman's stop and search of Lester's vehicle was unreasonably pretextual. Specifically, Ferguson argues that the absence of a visible license plate on the Ford served as a pretext to stop and search the vehicle for drugs. The district court, however, found that the stop was based on probable cause and was not pretextual. We must review the district court's findings of fact as to Ferguson's motion to suppress under the clearly erroneous standard. *United States v. Duncan,* 918 F.2d 647, 650 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2055, 114 L.Ed.2d 461 (1991).

> Ferguson argues that the weapon and drugs seized as a result of the stop should not have been admitted into evidence against him. *See Wong Sun v. United States,* 371 U.S. 471, 486–87, 83 S.Ct. 407, 416–17, 9 L.Ed.2d 441 (1963) (Court suppressed the use of narcotics discovered as a result of illegal police activity as "fruit of the poisonous tree"). This Circuit's standard for determining when a police investigatory stop is illegally pretextual is explained in *United States v. Pino,* 855 F.2d 357, 361 (6th Cir.1988), *cert. denied,* 493 U.S. 1090, 110 S.Ct. 1160, 107 L.Ed.2d 1063 (1990). In *Pino,* we adopted the

Eleventh Circuit's analysis regarding pretextual stops, applying the reasoning of *United States v. Smith,* 799 F.2d 704 (11th Cir.1986), *cert. denied,* —— U.S. ——, 112 S.Ct. 428, 116 L.Ed.2d 448 (1991). In *Smith,* the Eleventh Circuit wrote:

> [T]hat in determining when an investigatory stop is unreasonably pretextual, the proper inquiry ... is not whether the officer *could* validly have made the stop but whether under the same circumstances a reasonable officer *would* have made the stop in the absence of the invalid purpose.

799 F.2d at 709 (emphasis in original). We note that the "reasonable officer" standard articulated in *Smith* and adopted by this Court in *Pino* is the controlling standard in this Circuit regarding pretextual stops. *Pino,* 855 F.2d at 361; *see also United States v. Crotinger,* 928 F.2d 203, 206 (6th Cir.1991).

In *Smith,* a Florida Highway Trooper and a Drug Enforcement Agent followed two men traveling on Interstate 95 in a 1985 Mercury. The Trooper testified that they followed the vehicle because the men matched a drug courier profile. According to the Trooper, they followed the vehicle for about a mile and a half and pulled the vehicle over when they noticed the vehicle start to weave. After stopping the men, the Trooper questioned the driver about the ownership of the vehicle and also called for a drug dog to sniff the vehicle for drugs. With the assistance of the dog, the officers discovered cocaine in the trunk of the vehicle. The two men were arrested and charged with cocaine possession and conspiracy to distribute. They filed motions to suppress the cocaine found in their trunk, alleging that the stop of their vehicle was unreasonable. The trial court ruled that the stop was legal.

On appeal, the Eleventh Circuit wrote that "[t]he stop was unreasonable not because the officer secretly hoped to find evidence of a greater offense, but because it was clear that an officer would have been uninterested in pursuing the lesser offense absent that hope." 799 F.2d at 710. In analyzing the objective evidence in the case, the court noted that:

[W]hat turns this case is the overwhelming objective evidence that [Agent] Vogel had no interest in investigating possible drunk driving charges: he began pursuit before he observed any "weaving" and, even after he stopped the car, he made no investigation of the possibility of intoxication. . . . Based on this objective evidence, we conclude that a reasonable officer would not have stopped the car absent an additional, invalid purpose.

799 F.2d at 710–11. We think that the investigatory stop at issue in the instant case is disturbingly similar to the stop that was found to be pretextual in *Smith.*

In this case, Officer Writesman began his pursuit of Ferguson and Lester before he noticed that Lester's vehicle had no visible license plate. Writesman became suspicious of the two men when he saw Lester lay down across the front seat of the Ford, shortly after overhearing Ferguson's conversation with the guard. Writesman positioned himself across the street from the motel so that he could observe Ferguson and Lester's activity from a position of concealment. He observed Ferguson get out of his vehicle and then into the vehicle with Lester. He observed them drive to room 410, where Ferguson entered the room and came out a few minutes later. He continued to observe the men drive back to the Lincoln to retrieve a briefcase and then back to room 410, where Ferguson entered the room with the briefcase. When the two men finally left the motel parking lot, heading east on Summer avenue, Writesman followed them. According to Writesman's testimony, he did not notice that Lester's vehicle did not have a visible license plate until he began following the vehicle. Furthermore, Writesman stated that one of the reasons he stopped the vehicle was because of what he observed at the motel. We also think it is significant that Writesman made no inquiry or investigation whatsoever concerning the absence of a visible license plate on the Ford, nor did he give Lester a citation for not having a visible license plate.

Based on our review of the evidence in this case, we do not believe that a "reason-able officer" would have stopped Lester because his vehicle had no visible license plate, absent some additional, invalid purpose. The objective evidence, which includes Writesman's own testimony, shows that Writesman was not interested in giving Lester a warning or a citation for driving a vehicle with no visible license plate. Although Writesman testified that he routinely stops vehicles that do not display a visible license plate, there is overwhelming evidence that Writesman stopped the vehicle because he wanted to conduct an investigatory drug stop, suspicious of the activity he observed at the motel. Accordingly, we find that the district court's denial of Ferguson's motion to suppress the weapon and drugs seized during his arrest is clearly erroneous.

*Ferguson,* 989 F.2d at 204–05.

The *Ferguson* Court distinguished the traffic stop at issue in that case from the stops that were challenged and upheld in *Pino* and *Crotinger:*

This case is distinguishable from *Pino* and *Crotinger,* where this Court applied the *Smith* analysis and found that the challenged police stops were not illegally pretextual in either case. In *Pino,* an officer observed a vehicle swerving on and off the freeway, nearly hitting the guardrail. The officer pulled the vehicle over, questioned the driver, and decided to give the driver a citation and to arrest the driver for illegal lane changing. *Pino,* 855 F.2d at 358–59. Applying the "reasonable officer" analysis from *Smith,* we held that the stop of the vehicle was not pretextual, noting that the officer's "observation of the swerving vehicle gave him probable cause to believe that Pino had violated one or more . . . Tennessee motor vehicle statutes." *Id.* at 361.

In *Crotinger,* an officer using a speed radar detector pulled over a vehicle for going 66 mph in a 55 mph zone. Upon approaching the car, the officer observed white pills on the floor and detected the smell of marijuana. The officer obtained written consent from the owner of the vehicle to conduct a search of containers and compartments within the vehicle. A search was conducted and marijuana was found. The defendant, however, challenged the introduction of the marijuana as

evidence against him, on the ground that it was illegally obtained as the result of a pretextual traffic stop. We rejected this argument and held that probable cause existed for stopping the vehicle and that "[o]bjectively, it is reasonable for a police officer operating a speed trap to stop and ticket vehicles going 66 mph in a 55 mph zone." *Crotinger,* 928 F.2d at 206.

Based on clearly established precedent in this Circuit, we think the district court committed reversible error by denying Ferguson's motion to suppress. Therefore, we reverse Ferguson's conviction. Accordingly, we need not address Ferguson's argument that the district court erred by refusing to consider his challenge to the validity of two prior convictions used to categorize him as a career offender. *Ferguson,* 989 F.2d at 205–06.

In addition, Judge Boggs' relied upon *Smith* as the controlling standard for determining whether the traffic stop was unlawfully pretextual:

> Although the court professes allegiance to the objective test, it buttresses its conclusion with subjective evidence and concentrates primarily on Officer Writesman's actions after the stop was made.... The proper inquiry is whether a reasonable officer would have stopped Ferguson and Lester "in the absence of an illegitimate motivation." *Smith,* 799 F.2d at 708. (emphasis added). By focusing entirely on the illegitimate motivation and whether it was the true or dominant reason for the stop, the court, despite ostensibly adhering to the objective test, has applied a subjective test.
>
> ....
>
> Of course, not every minor violation of traffic regulations justifies a stop. As the Eleventh Circuit stressed, the question is not whether a reasonable officer could legally have stopped the defendant, but whether a reasonable officer would have stopped the defendant. *Smith,* 799 F.2d at 708. The appropriate inquiry under the objective test is whether the traffic violation is one that is so minor (e.g., failing to signal before changing lanes on an open road; going one mile over the speed limit; or failing to come to an absolutely complete stop before turning right at a stop

sign) that a reasonable officer would not have stopped an unsuspicious car, or whether the stop was for a reason that would have led a reasonable officer to make the stop under any circumstances. *Ferguson,* 989 F.2d at 206–07.

Despite this Circuit's repeated application of the *Smith* test, as followed by the original *Ferguson* Court, the majority has now applied, *en banc,* a new standard for determining when a police stop is unlawfully pretextual. By fashioning the law on pretextual stops to suit its own preferences, the Court overrules well established precedent in this Circuit. The majority's creation of a new rule for pretextual stops is not in the interest of justice.

For the Fourth Amendment to have meaning, a neutral and detached judge must evaluate the reasonableness of a particular search or seizure in light of the specific circumstances in which the search or seizure occurred. *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–1880, 20 L.Ed.2d 889 (1968). The *Smith* test as set out by the Eleventh Circuit provides meaningful Fourth Amendment protection. By merely focusing on whether an officer 'could' stop an individual, the majority fails to assess the reasonableness of an officer's conduct under specific circumstances and forfeits meaningful review of that conduct. Under the 'could' test, officers are given virtually unlimited discretion to determine who they will stop for minor traffic violations. Pursuant to the *Smith* test, however, the necessity of finding whether a reasonable officer *would* have stopped the individual limits the amount of discretion officers exercise.

By adopting the 'could' test, this Circuit diminishes the guaranteed protections of the Fourth Amendment. Although the majority attempts to distinguish the test it adopts, there is no meaningful distinction. Because the *Smith* test preserves the guaranteed protections of the Fourth Amendment, the Court should adhere to the *Smith* test and affirm the ruling in *Ferguson.*

NATHANIEL R. JONES, Circuit Judge, dissenting.

I join Judge Keith's dissent and would reverse as stated in the original panel opin-

ion. I write to emphasize my disagreement with the new law created by the *en banc* court.

As the court recognizes, this circuit has "repeatedly maintained" that the Fourth Amendment requires us to inquire whether a reasonable officer would have made a stop in the absence of an illegitimate motivation, and it is a "new test" that the court announces today. When a court overrules precedent and adopts a new constitutional test, it usually offers good reasons for doing so. Today, the majority does offer some reasons, in the last two paragraphs of section II, part C of its opinion. These reasons well state the neatness and efficiency of the circuit's new "test." Disturbingly, they also ignore the Constitution.

The opinion notes in passing that the need to protect against pretextual stops derives from the Fourth Amendment, but it never discusses the rationale underlying that Amendment, making today's result appear a bloodless exercise in doctrinal manipulation. A reader of the opinion might well conclude that nothing is "lost" by the circuit's elimination of the law against pretextual stops, as there is no indication that anything could ever have been gained by it in the first place.

I believe much is lost. The Fourth Amendment, everyone agrees, protects a citizen from being stopped for offenses when the authorities do not have, at the least, a reasonable suspicion that the citizen committed the offense. Until today, a police officer in this circuit could not stop a driver to search for illegal drugs on a mere hunch. Now, an officer can apparently act in the following manner, which I base on *United States v.*

*Smith,* 799 F.2d 704 (11th Cir.1986): 1) The officer sees a driver whom he wants to stop to search for illegal drugs, for no reason other than, perhaps, the driver's race, looks, or attire; 2) The officer then follows the driver until he can stop him for some minor, and rarely enforced, traffic violation, such as wheels crossing a few inches outside of the traffic lane or a turn signal flashed a few feet too late; 3) The officer searches for drugs pursuant to the valid stop for the traffic offense.[1]

Such actions drastically reduce the protections afforded by the Fourth Amendment's requirement that an officer have probable cause or reasonable suspicion in order to search for illegal contraband, since presumably almost any driver—whether he in fact turns out to be a drug possessor or not—could be stopped and searched in such a manner if police desired. These pretextual searches are permitted by the new test the court adopts today, which allows a stop to search for drugs so long as there is probable cause for a traffic offense.

In my view, the court errs in focusing narrowly upon whether there is probable cause to support the stop for the traffic offense, rather than making a broader "objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time."[2] Even in the most egregious case of pretext, I agree that the citizen can be issued the citation for his traffic violation. In the pretextual stop situation laid out above, however, the test for pretext must address whether the objective facts and circumstances in the case support the view that the officer would have stopped the citizen for the traffic offense in the absence of an ulterior motive. Accordingly, the court's announcement that an automobile

---

**1.** In *Smith,* 799 F.2d at 706, the officer testified that he wanted to stop a particular individual, that he followed the car until it weaved slightly, and that he then stopped the car and called for a dog to sniff for drugs. *See also United States v. Guzman,* 864 F.2d 1512, 1515 (10th Cir.1988) ("The classic example [of a pretextual stop], presented in this case, occurs when an officer stops a driver for a minor traffic violation in order to investigate a hunch that the driver is engaged in illegal drug activity"); *see generally* John M. Burkoff, *The Pretext Search Doctrine Returns After Never Leaving,* 66 U.Det.L.Rev. 363, 375 n. 56 (1989) (collecting over 50 reported cases from

1980's in which courts suppressed evidence based upon findings of pretext).

**2.** *Scott v. United States,* 436 U.S. 128, 136, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978). It is wrong to assume that the "would" test for pretext must be subjective. *See, e.g., Guzman,* 864 F.2d at 1518 ("if officers rarely stop seat belt law violators absent some other reason to stop the car, the objective facts involved in this stop suggest that the stop would not have been made but for a suspicion that could not constitutionally justify the stop"). Since announcing the impor-

search remains unconstitutional if the officer did not have probable cause for the traffic offense is well taken but has nothing to do with pretext. A defendant who brings such a claim does not have to produce any facts or circumstances showing that the traffic stop was only an excuse to search for something else but simply makes the familiar claim that he was stopped without probable cause.

The court emphasizes that its allowing of pretextual stops avoids the difficulties in having to apply either the "would" or the "could" tests to stop them. I agree, though I note that the determinations under those tests are no more difficult than those involved in other types of motions to suppress evidence. I also agree with the majority that our old test might "insulate[ ] from criminal liability" a person whom the police would not have stopped except for their hunch, but this again is a usual and accepted effect of enforcing the Fourth Amendment. In my opinion, the bottom-line difference between my view and the majority's is that I think our previous effort in applying the Amendment was a worthwhile one needed to properly protect citizens from unreasonable stops, but the majority does not. I believe the occasional decision we issued under the old test was well worth our time in its instruction to officers that they must behave in accordance with the law. Though the majority's view of the importance of protecting against such pretextual stops obviously differs from mine, I find it disturbing that nothing in the sizeable opinion even acknowledges the reasons why we and other circuits have protected against pretextual stops in the past.

The court's final reason for allowing pretextual stops most vividly underscores the opinion's sad omission of the Fourth Amendment. The opinion says that the new test properly "leaves to the legislatures the job of determining what traffic laws police officers are authorized to enforce and when to enforce them." We do, of course, defer to the legislatures throughout the broad expanse of normal lawmaking, and, again, no one contests the enforcement of the traffic law in

pretext cases. We nevertheless are entrusted with a duty as guardians of the Bill of Rights to apply limitations upon the legislature's power. If the majority were to have properly emphasized that pretext stop standards are meant to apply Fourth Amendment values, perhaps this last reason might not fit so seamlessly with the other support for allowing pretextual stops. The majority does not engage in "judicial restraint" merely because it expands the power of the legislature; rather, it does precisely the opposite when it makes policy judgments that lead this court to neglect its solemn duty to enforce—not eviscerate—the Constitution.

tance of objective factors in the evaluation of claims involving the Fourth Amendment, the Supreme Court, while not invalidating a search or seizure based upon pretext, has indicated that the existence of pretext might affect its Fourth Amendment inquiries. *See Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 621 n. 5, 109 S.Ct. 1402, 1415 n. 5, 103 L.Ed.2d 639

(1989); *New York v. Burger,* 482 U.S. 691, 716 n. 27, 107 S.Ct. 2636, 2651 n. 27, 96 L.Ed.2d 601 (1987); *see also Enriquez–Nevarez v. United States,* —— U.S. ——, 112 S.Ct. 428, 116 L.Ed.2d 448 (1991) (opinion of White, J.) (calling for Court to address on merits "recurring issue" of whether to apply "could" or "would" test to pretextual traffic stop cases).