UNITED STATES of America, Plaintiff,

v.

Lee Davis STRICKLAND, Defendant.

Crim. No. 95–50012.

United States District Court,
E.D. Michigan,
Southern Division.

July 18, 1995.

Mark C. Jones, U.S. Attorney's Office, Flint, MI, for U.S.

Jerome F. O'Rourke, O'Rourke, Goldstein, Joseph & Kelly, P.C., Flint, MI, for Lee Davis Strickland.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

GADOLA, District Judge.

Defendant Lee Davis Strickland is charged with being a felon in possession of a firearm. Before the court is defendant's motion to suppress the pistol taken from a car that he was driving at the time of his arrest on other charges. Defendant contends that the pistol should be suppressed because it was seized in the course of an illegal arrest and search. The court conducted an evidentiary hearing on June 16, 1995. For the reasons discussed below, the court will deny defendant's motion to suppress.

### I. Background

On June 17, 1994 at 7:00 p.m., defendant was driving his aunt's car in the City of Flint with a companion, Martisa McIntosh. A uniformed Flint police officer, Donnie Lane, in a marked car stopped defendant and ordered him out of the vehicle. The defendant was then arrested for operating a car without a driver's license. Following a search of the car by several uniformed and plain clothes officers, a loaded .38 caliber revolver was found on the floor in front of the driver's seat. The defendant was then told that he was under arrest for carrying a concealed weapon. The police discovered that defendant's companion was carrying $4,000 in cash. The defendant and his companion were then taken to a police station, and his aunt's car was impounded.

In his suppression motion, defendant contends that the police had no justification to stop and search his car. He alleges that they did not have probable cause to arrest him, and that the police did not have an "articulable suspicion" that he was committing a crime as is required by *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) in order to justify the stop of the car.

In response, the government argues that defendant's motion should be denied because the stop was justified on the following grounds: (1) defendant was speeding; (2) the police knew that the defendant was illegally driving a car in violation of his restricted license; (3) there was a reasonable suspicion that the defendant was engaging in drug trafficking; and (4) defendant has failed to establish that he has a privacy interest in the car he was driving which was leased in the name of his aunt.

During the evidentiary hearing, Lt. Jerome Koger, a member of the Flint Police Department, testified that he made the decision to stop the defendant. Koger was the officer in charge of the surveillance that was being conducted of the defendant concerning his involvement with drug trafficking. Koger was in plain clothes and was in an unmarked car. At the time of the stop, Koger was aware of the defendant's driving record and the fact that he had a restricted driver's license that only allowed the defendant to drive between his place of employment, the Down–Home Soul Food restaurant, and his home. Koger was also aware that the restaurant had closed down and that, as such, the defendant could not drive a car legally. Defendant concedes that he was driving in violation of the restriction on his license.

The stop of defendant's car was made by Lane, who was dressed in uniform and was driving a marked police cruiser. Koger had informed Lane that defendant was in violation of a restricted license, was suspected of drug trafficking, and that he may be armed. On this basis, Koger testified that over the

police radio he then ordered Lane to pull defendant over after he had driven away from the Southend Market, a grocery store that defendant had just entered. The police had followed defendant to the grocery store and had observed another individual, Larry Lott, enter the store. The police suspected that defendant, Lott, and the Southend Market were involved in drug trafficking. After five minutes, the defendant and Lott left the store without any grocery bags.

As soon as the defendant pulled away from the store he accelerated quickly and rounded a corner. Once the defendant sped away and turned a corner, Officer Lane, who had been following him, activated his car's overhead lights and siren and gave chase. The defendant accelerated and continued to race away for approximately one-half mile until his path was blocked by other police officers. Koger testified that defendant was driving fifty miles per hour in a thirty-five miles per hour zone.

After the defendant stopped, Lane pulled up behind him. In addition, Koger and Cedric Kendall, another Flint police officer, pulled up in their unmarked car. Lane approached the defendant and asked for his driver's license. Both Koger and Kendall testified that as they approached the car, they saw the defendant bending over to his right in the car, reaching down with his right hand. Koger then ordered Lane to remove the defendant from the car. Kendall stated that he looked into the car and saw a gun butt showing from underneath the driver's seat. It was at this point that the revolver was discovered on the floor in front of the driver's seat.

## II. Analysis

### A. Validity of the Stop

■ In his motion, defendant contends that the police had neither probable cause nor reasonable suspicion to justify stopping

his car. As a result, defendant argues that the seizure of the pistol was the fruit of an illegal stop and search that should be suppressed.

■ The court finds, however, that Koger and Lane were justified in stopping defendant because he was driving the car in violation of his restricted driver's license.[1] Even though the officers may have also been motivated by a suspicion, justifiable or not, that defendant was dealing drugs, the stop was valid based upon defendant's traffic violation. In *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 97, 130 L.Ed.2d 47 (1994), the Sixth Circuit held that "so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." A motor vehicle stop cannot be successfully challenged based upon the existence of other subjective motivations for the stop. *Id.; see also United States v. Harvey*, 16 F.3d 109 (6th Cir.1994).

Under this standard, the correct inquiry is "whether [the] particular officer in fact had probable cause to believe that a traffic offense had occurred, regardless of whether this was the only basis or merely one basis for the stop." *Id.* This determination is "fact-dependent and will turn on what the officer knew *at the time he made the stop.*" *Id.* (emphasis in original).

In *Ferguson,* before a stop was made, an officer noticed that a car lacked a license plate and the officer knew that this was a violation of the law. The court found that the stop was lawful and that the officer's actions "before or after the stop, or what other reasons he gave for the stop" are irrelevant. *Id.* at 392–93.

In this case, Koger and Lane both knew that the defendant was driving in violation of

---

1. Because it finds that the seizure of the pistol was valid under *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 97, 130 L.Ed.2d 47 (1994) based upon the defendant's restricted license, the court finds it unnecessary to address defendant's standing to contest the search of his aunt's car. In addition, the court also finds it unnecessary to address the various facts presented by the government that allegedly support a finding of rea-

sonable suspicion of drug trafficking activity so as to independently justify the stop of his car under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Finally, Lane's testimony is not sufficiently clear as to whether he was aware of the fact that the defendant was violating the speed limit when Lane activated his lights and siren. As a result, the court does not base its decision that the stop of defendant's car was justified because he was speeding.

his restricted license before the stop occurred. Koger had independent knowledge of the restrictions of defendant's license, as well as the fact that his place of employment was out of business. Lane was aware of the situation because a superior officer, Koger, had informed him of defendant's restrictions, and Lane himself observed the defendant drive away from the Southend Market in a car. Furthermore, Koger ordered Lane to stop defendant's car, and Koger was the officer in charge of the investigative team.[2] As a result, Lane acted reasonably in relying upon information supplied by his superior officer.

Under these circumstances, it is irrelevant that the police may have been conducting a surveillance of the defendant and that they had hoped to discover evidence of drug trafficking when he was stopped. Based upon the Sixth Circuit's decision in *Ferguson*, the stop of defendant's car was based upon knowledge that the defendant had committed a traffic offense.[3] On this basis, the stop of defendant was lawful and not in violation of the Fourth Amendment.

### B. Validity of the Search

 Once the police have made a valid traffic stop, they may order the driver to exit the car without violating the Fourth Amendment. *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). Furthermore, the police may conduct a search of the "passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, if the police officer possesses a reasonable belief based on specific and articulable facts that the suspect is dangerous and may gain immediate control of the weapons." *United States v. Paulino*, 935 F.2d 739, 746–47 (6th Cir.), *cert. denied*, 502 U.S. 914, 112 S.Ct. 315, 116 L.Ed.2d 257 (1991). In addition, once a defendant is arrested, an officer is permitted to search the passenger compartment of the defendants' automobile even after he has been removed from the car. *United States v. Mans*, 999 F.2d 966, 968–69 (6th Cir.), *cert. denied*, ——— U.S. ———, 114 S.Ct. 567, 126 L.Ed.2d 467 (1993).

 Based upon this authority, it is clear that once the defendant in this case was arrested, the police were justified in searching the car. Koger and Kendall have also presented specific facts indicating that the defendant had reached forward in his car after having fled from the police and appeared to try and conceal something underneath his seat. Further, Kendall was able to see the butt of the gun in plain view when he looked into the car. This fact combined with Koger's knowledge that the defendant had previously been convicted of a felony weapons charge also justified the police search of the car following defendant's arrest.

### ORDER

NOW, THEREFORE, IT IS HEREBY **ORDERED** that defendant Lee Davis Strickland's motion to suppress is **DENIED**.

**SO ORDERED.**

---

**2.** During his testimony, Koger explained that Lane was ordered to make the stop because he was uniformed and in a marked car. In this way, Koger hoped to avoid any violent confrontation that could have resulted if plain clothes officers in an unmarked car had confronted the defendant, a suspected drug dealer. By using a marked car in such situations, the police apparently hope to convince suspects that they are not being car-jacked or attacked by a rival drug gang. In addition, the police hope to lull the suspect into believing that a minor traffic stop has occurred, rather than an investigation of suspected drug activity. Such conduct by the police appears eminently reasonable.

**3.** Defendant cites MCLA § 764.15(1)(a)–(j) to support the proposition that Lane could not make a stop or an arrest of defendant without a warrant unless an offense was committed in his presence. However, Lane testified that he was informed by a superior officer that the defendant had a restricted license. Lane then observed the defendant drive away from the Southend Market in violation of his restricted license, and then stopped the defendant. Under defendant's own argument, the traffic offense occurred in Lane's presence, and thus he acted properly under section 764.15(1)(a). Lane was entitled to rely upon information supplied by his superior officer in the same way that he is entitled to rely upon information provided by the police department about outstanding parking or traffic offenses relating to a particular driver's license or license plate.