HARRIS, Judge,
dissenting.
I respectfully dissent.
I believe that State v. Bass, 609 So.2d 151 (Fla. 5th DCA 1992), controls this decision. Like the defendant in Bass, Rogelio Lazaro Garcia was stopped when the arresting officer testified that the expiration date of Garcia’s vehicle tag could not be seen as he approached from the rear.
Roy Swats, a Florida Highway Patrol officer for some 22 years, testified as follows:
A. I was sitting on the east shoulder facing south observing northbound traffic when this vehicle went by. As it went by, I looked in the rear view. Things we look for are tags and I did not see a tag down in the bumper area where a normal tag would have been expected to be seen. I pulled out at that time, U-tum, proceeded back on — I was facing south, went back on and came up alongside the vehicle and saw what appeared to be a paper tag in the left rear window high up. I could not—
Q. Okay. What was the weather like at this time?
A. It was raining. It was dark, very dark, overhead street lights.
Q. Was this during any hurricane?
A. Hurricane Aaron had come ashore.
Q. And this was 4:00 o’clock in the morning?
A. 4:05.
Q. When you observed this paper tag, were you able to read what the tag said?
*1355 A. I could see the tag numbers. I could not see the expiration.
Q. Is that what you routinely check for?
A. Yes, Ma'am.
After the stop, the officer determined that the tag had not expired but he asked to see Garcia’s driver’s license in any event. Stating that he had no driver’s license, Garcia showed the officer a passport instead. A passenger in the vehicle produced a registration for a temporary tag but it was not for the temporary tag affixed to the rear window. The officer ran a check on Garcia through the computer and the information came back that his driver’s license had been suspended. Garcia was placed under arrest and a search of the vehicle turned up illegal narcotics. Garcia moved to suppress the evidence on the basis of an illegal stop. The trial court granted the motion.
The trial court, in distinguishing this case from Bass, stated:
Bass was stopped for a traffic check because the temporary tag was not sufficiently visible for the officer to determine whether it had expired. The facts of this case are different.
In the instant ease, the officer may not have seen the tag because of reduced visibility, but the tag was mounted in the rear window and was not obstructed or obscured.
The court then, relying on Taylor v. State, 644 So.2d 132 (Fla. 1st DCA 1994) (which holds that a defendant’s tag was not improperly displayed when taped inside the rear window), held that since Garcia had not committed a violation, there was no “probable cause” for the traffic stop. The court suppressed the drugs found in the vehicle.
In my view, Taylor does not support the trial court’s decision. In Taylor, the officer stopped Taylor because the temporary tag was displayed inside the rear window. The First District held (based on regulations then in existence but since repealed) that it was proper to place a temporary tag inside the vehicle’s rear window and that the stop for that reason was thus improper.
Section 316.605, Florida Statutes, in addition to requiring that the “license plate” be fastened “outside” the vehicle (a requirement that the trial court ruled was answered by Taylor) also requires that the license be displayed so that it is “plainly visible ... 100 feet from the rear ...” (a requirement not addressed by Taylor nor discussed by the trial court). The validity of this rear visibility requirement was not challenged below nor on appeal. Thus, while Taylor held, based on a then existing regulation, that the placement of the temporary tag in the rear window did not justify a stop, it did not hold, and does not stand for the proposition, that placing the tag in the rear window is a defense to the requirement that the license be visible from the rear.[1] To ignore this rear visibility requirement would allow one to place his or her tag on top of the trunk facing upward, so long as it remained unobstructed and unobs-cured, even though it would be visible only when the officer walks up behind the vehicle. The officer in our case did. not stop Garcia because the tag was mounted in the rear window; Garcia was stopped because in mounting the tag on the curved portion of the rear window, the expiration date of his tag was not visible as he drove up behind the vehicle.[2] The officer, according to his unre-futed testimony, stopped the vehicle only because the placement of the tag “high up” in the rear window prevented him from being able to read the expiration date on the temporary tag from his trailing vehicle. This might have been because of the distortion caused by the curvature of the rear window or because the high placement of the tag removed it from the range of illumination of *1356 the headlights of a trailing vehicle.[3] Had the tag been mounted in a different location, even in the rear window, perhaps its expiration date would have been sufficiently visible even in the dark. If one examines the photograph referred to by the majority, it is obvious that the photographer is looking down on the license tag at the approximate distance and location of an officer who approaches the vehicle on foot after making a stop. The officer in our case testified that from this vantage he could also read the expiration date. The photograph, taken in the bright sunshine, does not show whether it would be visible in the beam of following headlights. And because the photograph was taken at the eye-level of one standing right behind the vehicle, it does not show the effect of the curvature of the window on the tag’s visibility by one following in the rear.
Even though the trial court found that the temporary tag was not “obstructed or obscured,” this does not satisfy the required visibility standard. The trial court did not find that the officer was not telling the truth about the visibility of the expiration date from his vantage point at the rear of the vehicle. The judge accepted this testimony but held it irrelevant because the tag was lawfully mounted in the rear window and was neither obstructed nor obscured. But the judge did not consider the effect of the curvature of the window or the fact that the placement of the tag might have put it out of the beam of the following headlights. The issue before us is not whether one may place his or her tag in the rear window (although one might be curious as to how an agency regulation can supersede a specific statutory requirement, a question that apparently troubled the agency so much that it repealed its conflicting regulation), but rather whether one may place the tag in the rear window in such a manner that the expiration date is not visible from the rear by one sitting in a following vehicle less than 100 feet behind. Even if the license tag had been mounted in the bumper area of the vehicle, if the tag had been slanted so that its expiration date could only be seen from the tops of adjoining buildings or could not be seen because of an inoperable tag light, the officer could properly stop the vehicle to determine the expiration date. This was essentially the holding in Bass.
I find nothing in the record to support the majority’s position that the trial court necessarily found that the officer’s testimony was not credible. We should not presume that the trial judge disbelieved the officer. I agree with the State that it was simply because the trial court believed it to be legal to mount the tag in the back window so long as the tag is unobstructed and unobscured, that the trial court found that such stop was not justified. There is no indication that the court considered the issue of rear visibility. Even if the court did consider this issue, there is nothing in the record, including the photograph, that disputes the officer’s testimony that he could not see the expiration date of Garcia’s tag as he approached from the rear until after the stop and after he was in a position similar to that of the photographer’s, which would support a finding that the officer was untruthful.
Once the vehicle was stopped, even though the officer was able to see that the expiration date of the license tag had not expired, there is nothing to prevent him from asking to see the operator’s driver’s license.[4] When the driver responded that he had none, then the officer properly pursued the issue. I would not apply the exclusionary rule to the facts of this case.

. In State v. Bentley, 596 So.2d 773 (Fla. 2d DCA 1992), the court upheld a stop when the license tag was placed in a tinted rear window.

. The court in United States v. Ferguson, 8 F.3d 385 (6th Cir., 1993), cert. denied, 513 U.S. 828, 115 S.Ct. 97, 130 L.Ed.2d 47 (1994), held in upholding a stop when the license was not visible: “It is irrelevant that the vehicle in fact had a drive-out tag lying on the back shelf of the car because the ordinance makes it an offense to drive without a 'visible' license plate, and the vehicle did not have a visible license plate.”

. It is because the license plate must be visible at night that a "tag light” is required. We held in State v. Girard, 694 So.2d 131 (Fla. 5th DCA 1997), that an inoperable tag light will justify a traffic stop. See also Indialantic Police Department v. Zimmerman, 677 So.2d 1307 (Fla. 5th DCA 1996) (missing tag light is a proper basis for the stop of a vehicle).

. In my view, if the expiration date was not visible as the officer approached within 100 feet of the vehicle, the stop could also be justified in • order to issue a summons for a civil infraction pursuant to Section 316.655(1) and (2), Florida Statutes.