OPINION
Defendant-appellant, David Terrell, appeals his conviction in the Clinton County Court of Common Pleas for driving while under the influence of alcohol ("DUI"). We affirm the decision of the trial court.
On June 28, 1998, shortly before midnight, Patrolman Kelly Hopkins of the Wilmington Police Department was on routine patrol when the loud exhaust system of a Ford Mustang driven by appellant drew the attention of the officer. The officer decided to follow appellant. Appellant turned left onto Short Street, a narrow, unmarked two-way street. The officer observed appellant drive on the left-hand side of Short Street for the entire length of the street. The officer testified that there were no cars parked on Short Street that night. Appellant testified that a pick-up truck was parked on the right-hand side of the road. The officer eventually pulled appellant over at the intersection of Mulberry and Truesdell Streets.
Upon approaching appellant's vehicle, the officer noticed a "strong odor of intoxicants" about appellant's person and observed that appellant's eyes were red and watery and that his speech was somewhat slurred. In response to the officer's question, appellant stated he had not had anything to drink in three weeks. Appellant was arrested after he failed to satisfactorily complete three field sobriety tests.
Appellant was transported to the Wilmington Police Department. There, the officer asked appellant to submit to a breath test to ascertain the concentration of alcohol present in appellant's breath. Appellant consented to the test. Appellant told the officer that he did not have any physical or medical condition that would prevent him from giving a sample of his blood, breath, or urine. The officer testified that appellant put the mouthpiece correctly in his mouth but only blew for a short amount of time. The officer repeatedly told appellant to keep blowing but appellant did not comply. The test result printed "incomplete." The officer asked appellant to take the test again but this time appellant stated he could not because he had emphysema. Appellant eventually refused to take the test again.
Appellant denied that he refused to take the test. Appellant testified he tried to blow in the machine three times but that each time it failed to work. Appellant testified that his request for a blood test was denied. Appellant admitted he did not tell the officer about his emphysema until he was told he was not performing well on the test.
Appellant was indicted on one count of DUI in violation of R.C.4511.19(A)(1), a fourth degree felony.[1] The indictment specified that appellant had been convicted of DUI three times within the previous six years. Appellant pled not guilty.
Appellant moved to suppress the evidence that he had been driving under the influence on the ground that the initial investigative stop was invalid. The trial court denied appellant's motion to suppress. A jury found appellant guilty of DUI and appellant was sentenced accordingly. Appellant appeals his conviction and raises two assignments of error.
In his first assignment of error, appellant argues that the trial court erred by denying his motion to suppress. Appellant contends that the officer did not have a reasonable and articulable suspicion to stop him "for allegedly driving too far over on a street with no markings." In support of his contention, appellant cites several opinions from this court holding that a de minimis traffic violation, without more, was insufficient to justify an initial investigative stop.[2]
When considering a motion to suppress evidence, the trial court serves as the trier of fact and is the primary judge of the credibility of witnesses and the weight of the evidence. State v. Fanning (1982),1 Ohio St.3d 19, 20. When reviewing a trial court's decision on a motion to suppress, an appellate court must accept the trial court's factual findings if they are supported by substantial and credible evidence.State v. Williams (1993), 86 Ohio App.3d 37, 41. An appellate court, however, reviews de novo whether the trial court applied the appropriate legal standard to the facts. State v. Anderson (1995), 100 Ohio App.3d 688,691.
It is well-established that an automobile stop is subject to the constitutional imperative that "it not be unreasonable under the circumstances." See Whren v. United States (1996), 517 U.S. 806, 810,116 S.Ct. 1769, 1772.
 Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity. (United States v. Ferguson [C.A.6, 1993], 8 F.3d 385, applied and followed.)
 Dayton v. Erickson (1996), 76 Ohio St.3d 3, syllabus. Thus, as a general matter, an officer's decision to stop an automobile is reasonable whenever the officer has "probable cause to believe that a traffic violation has occurred." Whren, 517 U.S. at 810, 116 S.Ct. at 1772. The focus is not on whether a "reasonable" officer "would" have stopped a suspect even though he had probable cause to believe that a traffic violation had occurred, or whether any officer "could" have stopped the suspect because a traffic violation had in fact occurred, but on whether this officer had probable cause to believe that a traffic offense had occurred. United States v. Ferguson
(1993) 8 F.3d 385, 391.
In this case, the officer clearly had probable cause to initiate a traffic stop when appellant committed a traffic violation by driving left of center. See, e.g., R.C. 4511.25 and 4511.30; see, also, Wilmingtonv. Carter (Jan. 18, 2000), Clinton App. Nos. CA99-07-017 and CA99-07-018, unreported. Appellant's contention that the officer lacked reasonable suspicion because his traffic violation, if any, was de minimis, is meritless. The cases cited by appellant concerning de minimis traffic violation stops have been effectively overruled by the Ohio Supreme Court's decisions in State v. Wilhelm (1998), 81 Ohio St.3d 444, andErickson, 76 Ohio St.3d at 3. Further, this court has recently expressly overruled Johnson and its progeny to the extent those cases incorrectly maintain that an officer must have a reasonable articulable suspicion to initiate a traffic stop even where the driver of the vehicle has committed a traffic violation. State v. Moeller (Oct. 23, 2000), Butler App. No. CA99-07-128, unreported.
Therefore, we hold that appellant's stop was reasonable because the officer had probable cause to believe that appellant committed a traffic violation. The evidence obtained as a result of the traffic stop was admissible and the trial court properly denied appellant's motion to suppress. Accordingly, appellant's first assignment of error is overruled.
In his second assignment of error, appellant argues that the trial court incorrectly denied his motion for a mistrial following the alleged misconduct of the arresting officer in testifying about the breathalyzer reading he saw while appellant was blowing into the machine. Appellant contends that the testimony about the reading without expert testimony in a R.C. 4511.19(A)(1) prosecution unfairly prejudiced him and entitled him to a mistrial.
At trial, the officer was testifying on direct examination about the breathalyzer test taken by appellant when he referred to the readout on the machine as follows:
 Q. Alright. When you asked [appellant] with regards to that test and he initially stated, yes, he would take the test, did he start by was he blowing into the tube?
 A. Yes, in the mouth piece.
* * *
 Q. Alright. What did you observe of what were you observing at that time when he was doing that?
 A. I was observing both him and the machine.
 Q. Alright. What were you observing with regards to how he was trying to do or how he was performing the test?
 A. I was making sure that he didn't put the whole mouth piece in his mouth, or was tak — blowing like [demonstrating] right into the tips or he was getting fresh air at the same time. I need the tip has to go into his mouth, not the whole mouth, but the tip.
 Q. And what did you observe?
 A. He blew it he put it correctly into his mouth and blew only for a short amount of time.
 Q. Okay. Then what happened?
 A. At which time myself or Patrolman Eshler advised looked down and he said, Did you see that, and I observed a reading of a .216.
 Appellant immediately moved for a mistrial. The trial court postponed its ruling to the next break. Direct examination of the officer continued without any more references to the breathalyzer reading. During a bench conference, the trial court denied appellant's motion for a mistrial, stating it would give the jury a curative instruction. Upon the jury's return to the courtroom, the trial court advised them as follows: "Just before we took our break there was some testimony regarding the machine that was used to do the alcohol testing. I'm going to instruct you to disregard any testimony that was given with regard to any results because the machine never reached any results because there was never a printout, so any testimony that alluded to any results is invalid and should not be considered by you." The trial court again advised the jury before the jury's deliberations that "[s]tatements or answers that were stricken by the Court or which you were instructed to disregard also are not evidence and must be treated as though you have never heard them."
Pursuant to Crim.R. 33, a mistrial may be granted based upon the misconduct of a prosecution witness. State v. Bolognue (Sept. 10, 1997), Summit App. No. 18171, 1997 Ohio App. LEXIS 4116, at *11, unreported. However, a mistrial should be granted only when a fair trial is no longer possible. State v. Stewart (1996), 111 Ohio App.3d 525,533. A trial court's decision whether to grant a mistrial due to something that occurred during trial is entrusted to the court's sound discretion, State v. Rivera (1994), 99 Ohio App.3d 325, 328, and will not be disturbed on appeal absent a showing of material prejudice. State v.Sage (1987), 31 Ohio St.3d 173, 182. The phrase "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Rivera at 328. This rule is based on the fundamental principle that the trial judge is in the best position to gauge the impact of any error on the jury and determine whether a mistrial is necessary. See, e.g., Hamiltonv. Kuehna (Sept. 8, 1998), Butler App. No. CA97-10-198, unreported; Statev. Evers (May 8, 1989), Clermont App. No. CA88-09-068, unreported.
Upon reviewing the record, we find that the officer's testimony about the breathalyzer reading did not materially prejudice appellant by depriving him of a fair trial. First, appellant "did not move in limine
for an opportunity to have the admissibility of the breathalyzer reading first determined outside the presence of the jury." Bolognue, Summit App. No. 18171, 1997 Ohio App. LEXIS 4116, at *12, unreported.[3]
Second, shortly after the remark in question, and again before the jury's deliberations, the trial court instructed the jury to disregard the remark. Curative instructions have been recognized as an effective means of remedying errors or irregularities which occur during trial. State v.Zuern (1987), 32 Ohio St.3d 56, 61. A jury is presumed to follow any curative instructions given by the trial court. State v. Henderson
(1988), 39 Ohio St.3d 24, 33.
Finally, the evidence against appellant was strong enough that it cannot be said that the officer's single remark about the breathalyzer reading resulted in an unfair trial. The officer stopped appellant after he observed appellant drive left of center for the entire length of Short Street. The officer testified that appellant had a strong odor of intoxicants, a somewhat slurred speech, and red and watery eyes, and that he failed to satisfactor-ily complete three field sobriety tests. Appellant's statement to the officer that he had not had anything to drink in three weeks was contradicted by Zella Fulk who works at the Clinton County homeless shelter. Fulk testified that in the evening of June 27, 1998, the day before appellant's DUI arrest, appellant came back to the shelter with the smell of beer on his breath. When confronted by Fulk, appellant denied he had been drinking.
In light of all of the foregoing, we "cannot conclude that a brief reference to a breathalyzer followed by a * * * curative instruction resulted in a different outcome than would have been reached had the remark not been made." Bolognue, Summit App. No. 18171, 1997 Ohio App. LEXIS 4116, at *14, unreported. The trial court's denial of appellant's motion for a mistrial was not an abuse of discretion. Appellant's second assignment of error is overruled.
Judgment affirmed.
WALSH, J., concurs in judgment only.
VALEN, J., concurs in part and dissents in part.
VALEN, J., concurring in part and dissenting in part.
 Concurrence
I concur with the analysis and resolution of the first assignment of error. An officer needs probable cause to stop a vehicle for a major or minor traffic violation. In this case there was an alleged traffic violation, so probable cause is the applicable standard to use to review the legality of the stop.
VALEN, J., concurring in part and dissenting in part.
 Dissent
Unlike my colleagues, I believe that the admission of the .216 reading from appellant's incomplete breathalyzer test merited a mistrial. Therefore, I respectfully dissent.
The breathalyzer test printout indicated that the test was "incomplete." Therefore, this was an invalid test. The test "result" should never have been heard by the jury, and appellant's motion for mistrial should have been granted immediately.
The majority writes that appellant "`did not move in limine for an opportunity to have the admissibility of the breathalyzer reading first determined outside the presence of the jury.'" The majority is of the opinion that appellant's motion in limine was inadequate because it "focused solely upon appellant's refusal and never referred to the reading." I disagree.
Prior to trial, the defense attorney stated, "I have a motion inlimine regarding any so-called refusal. I would assume that the State intends to present evidence. There was not refusal. He tried to give a breath sample to this machine, and the machine was not operatingproperly." (Emphasis added.) This motion in limine to exclude all evidence regarding the refusal of the test implicitly includes a request to prohibit any admission of the .216 test reading.
Previously, this court affirmed a trial court's decision to suppress the results of an incomplete breathalyzer test. See _State v. Davies
(Aug. 23, 1993), Warren App. No. CA92-09-079, unreported. In Davies, the defendant could not complete the breathalyzer test because she had asthma and was not able to provide a large enough breath sample. From her partial attempt, the machine gave a reading of .137. On appeal, the state argued that the defense did not specifically raise the issue of the reliability of the BAC verifier in its motion to suppress. In affirming the trial court's decision to grant the defendant's motion to suppress, this court stated, "[a]lthough appellee did not specifically mention in her memorandum supporting the motion to suppress that she was challenging the results of the breath test because it was incomplete, we do not think the state needs to be put on notice that something so _obviouslyinadmissible may be suppressed." Id. at 3.
In the case sub judice, the defense's motion in limine was timely and specifically aimed at excluding the testimony regarding the breathalyzer test, which obviously includes the test "result" of .216. Any other interpretation belies any common sense or practical application of the law and is contrary to the previous decision of this court.
Not only did the defense move the court in limine to exclude the breathalyzer testimony, but the defense also objected to this testimony during the trial. During the officer's testimony about the operating of the breathalyzer machine, the following exchange occurred:
 MR. DENNIS: I'm, going to object, Your Honor, since we don't have a test in this case. I don't know what the point of all this is.
 MS. QUIGLEY: I'm just going through what the machine does in this, Your Honor.
 MR. DENNIS: But, I mean, why?
 MS. QUIGLEY: Because I believe I'm arguing there's a refusal and you're arguing there isn't.
 THE COURT: I think a certain amount of this has to come in, so but if you could speed it along.
 Prosecutor Quigley continued to question the officer about the test in detail, and specifically asked the officer about what he had observed when appellant was blowing into the machine. Once the officer testified that he saw a reading of .216 on the breathalyzer machine, the defense attorney immediately moved for a mistrial.
The trial court told the attorneys that they would discuss the defense's motion during break and allowed the officer to complete his testimony. Then an off-the-record side bar conference occurred outside the hearing of the jury. It was only after the jury returned from a ten-minute break that the trial court instructed the jury to disregard the officer's testimony as to the breathalyzer "result."
In a personal injury case, evidence of liability insurance is highly prejudicial and is admissible in trial only if directly relevant to an issue at trial. See City of Cleveland v. Peter Kiewit Sons' Co. (C.A.6, 1980), 624 F.2d 749, 758. The introduction of evidence of liability insurance coverage where it is not directly relevant to an issue being litigated is generally grounds for mistrial. White v. the Standard OilCo. (1962), 116 Ohio App. 212, 220. In a criminal case, the rules to protect against the admissibility of prejudicial and untrustworthy evidence should be even higher. The trial court should have granted appellant's motion for mistrial.
The majority writes, "the evidence against appellant was strong enough that it cannot be said that the officer's single remark about the breathalyzer reading resulted in an unfair trial." Contrary to the majority's assertion, I believe that appellant was materially prejudiced by the testimony that he had registered a reading of .216.
The jurors heard that when appellant blew into the breathalyzer machine, a reading of .216 registered. The jury knew the significance of the .216 reading because the officer had testified just minutes earlier that .10 was the per se legal limit. The earlier testimony that the perse legal limit was .10 exacerbates the prejudice where the officer then testifies to a reading that is over two times the legal limit. This fact remained in the jurors' minds for their consideration throughout the rest of the officer's testimony, during the side bar conference, and during their break. A limiting instruction cannot unring the proverbial bell.
The state's evidence was challenged by the testimony of the defense witnesses. George Tribune, who testified for the defense, testified that he was in the vehicle with appellant when appellant was stopped by the police officer. Tribune testified that he had been with appellant from the time he had left work, 5:30 p.m., until the time that the stop occurred, around 10:00 p.m. Tribune testified that during that time he did not see appellant drink any alcohol. According to his testimony, Tribune and appellant had visited the grocery store right before the stop and appellant had not bought any alcohol at the store.
Appellant also testified in his own defense. During his testimony, appellant explained that he had to drive down the middle of the street because otherwise he would have hit the vehicles parked on the right hand side of the street. Appellant testified that he told the officer several times that he had not been drinking. Appellant also testified that he told the officer that he could not complete the breathalyzer test because he has asthma and emphysema. Moreover, appellant testified that he asked to take a blood test after the breathalyzer test attempts, but the officer refused this request.
This was a case of credibility where the jury was asked to choose between the testimony of the officer and the testimony of appellant and his driving companion. The breathalyzer reading was presented as the single piece of objective and scientific evidence against appellant; appellant's performance of the field sobriety tests and the officer's observations about appellant's appearance and demeanor were subjective. Appellant presented a viable defense, and the .216 reading may have been the deciding factor in the jury's determination of appellant's guilt. The introduction of the breathalyzer test reading did materially prejudice the appellant.
I hereby respectfully dissent from the analysis of and the finding in the second assignment of error.
[1] Appellant was also indicted on one count of driving under suspension in violation of R.C. 4507.02. That charge was dismissed by the trial court during appellant's trial for lack of proof.
[2] For example, appellant cites State v. Johnson (1995),105 Ohio App.3d 37; State v. Glasscock (1996), 111 Ohio App.3d 371;Hamilton v. Lawson (1994), 94 Ohio App.3d 462; Mason v. Loveless (1993),87 Ohio App.3d 264; State v. Giesler (Aug. 30, 1985), Clermont App. No. CA85-02-003, unreported.
[3] We are mindful that on the first day of trial, appellant orally moved in limine to exclude any evidence of his alleged refusal to take the breathalyzer test. Appellant's alleged refusal was a contested issue from the very beginning of the trial. Although the BAC Datamaster test report included the breathalyzer reading (it was deleted before the report went to the jury), thus putting appellant on notice of its existence, the motion in limine focused solely upon appellant's refusal and never referred to the reading. As previously noted, appellant did not move in limine to determine "the admissibility of the breathalyzerreading * * * outside the presence of the jury" when he had the opportunity. Having failed to do so, we find that the officer's testimony about the breathalyzer reading did not materially prejudice him.