OPINION
{¶ 1} Plaintiff-appellant the State of Ohio appeals the June 21, 2007 Judgment Entry of the Stark County Court of Common Pleas sustaining Defendant-appellee Robert Hamilton Johnson's motion to suppress evidence.
 STATEMENT OF THE CASE AND FACTS {¶ 2} The Stark County Grand Jury indicted Appellee and a co-defendant, James Lamont Bouie, charging them both with one count of trafficking in cocaine, and one count of possession of cocaine. Based on the amount involved, both offenses were charged as felonies of the second degree.
 {¶ 3} On June 12, 2007, Appellee filed a motion to suppress cocaine found on Bouie's person while riding in the car, as well as a large amount of cash found on Appellee's person. The trial court conducted a hearing on the motion to suppress on June 15, 2007.
 {¶ 4} At the evidentiary hearing on Appellee's motion to suppress, the following facts were established: *Page 3 
 {¶ 5} On the afternoon of April 3, 2007, Sgt. John Dittmore of the Canton Police Department observed two parole officers in a high crime neighborhood in Canton investigating the neighborhood and checking in on the homes of parolees. Sgt. Dittmore engaged in a conversation with the parole officers. During the conversation, Dittmore saw a car with tinted windows and no front license plate drive west on Lippert Road. As the car drove past him, Dittmore noticed the car had a Michigan rear license plate. Dittmore turned his car around and decided to follow the car. The parole officers followed behind Dittmore to provide assistance.
 {¶ 6} Dittmore followed the car for several blocks. While following the car, Dittmore observed the car turn left into a parking lot, only turning on the turn signal as the car was making the turn, instead of the required distance before turning.[1],[2]
 {¶ 7} Dittmore immediately activated his cruiser lights to affect a traffic stop in the parking lot. The parole officers pulled in right behind Dittmore to assist.
 {¶ 8} As Dittmore approached the vehicle, he noticed two people in the front seat and one in the back. The person in the rear seat was making frantic movements, which alarmed Dittmore. Dittmore approached the front of the vehicle and asked the *Page 4 
driver, Appellee, for his operator's license and identification. All three occupants of the vehicle were residents of Pontiac, Michigan.
 {¶ 9} Parole Officer Rick Polinori asked the passengers if anyone was on parole, to which one of the passengers, James Lamont Bouie, responded he was. Polinori asked Bouie to exit the car, and asked him if he had anything on him before he searched him. Bouie told Polinori he did not, and the parole officer conducted the search. While patting him down, Polinori felt a large lump in the back of Bouie's buttocks. As Polinori shook Bouie's pants, a bag of crack cocaine fell to the ground. All three passengers were then placed under arrest.
 {¶ 10} Via Judgment Entry of June 21, 2007, the trial court sustained Appellee's motion to suppress the evidence.
 {¶ 11} The State now appeals, assigning as error:
 {¶ 12} "I. THE TRIAL COURT ERRED IN SUSTAINING THE MOTION TO SUPPRESS BECAUSE THE POLICE OFFICER'S MOTIVATION OR PRETEXT FOR MAKING A TRAFFIC STOP IS IRRELEVANT AS LONG AS THERE IS PROBABLE CAUSE TO MAKE THE STOP."
 {¶ 13} The trial court's June 21, 2007 Judgment Entry states:
 {¶ 14} "At the time that Sergeant Dittmore first observed the vehicle traveling on Lippert, he was not able to articulate any reasonable suspicion of criminal behavior. He noted that the car had tinted windows, that the area on Lippert was an area of drug activity and that the car was from Michigan. However, the vehicle was not stopped and there was no activity going on around or in the car that would give rise to any suspicion that would differentiate it from any other vehicle traveling on Lippert at 2:00 p.m. on that *Page 5 
date. Not withstanding the absence of any basis, Sergeant Dittmore made a decision to stop the vehicle and communicated that decision to Parole Officer Polinori. Parole Officer Polinori agreed to back up Sergeant Dittmore and followed Sergeant Dittmore's car. Thereafter, Sergeant Dittmore testified that he observed the traffic violation that gave rise to the stop in that he observed the vehicle beginning to turn before activating the turn signal.[3]
 {¶ 15} "While the Court acknowledges the body of law that a pretextural basis may be utilized to stop a vehicle, that doctrine does not apply to the situation where a decision to stop a vehicle is not based on a reasonable suspicion of criminal activity but rather is based solely on the desire of an officer to stop the vehicle and the decision is articulated as in present case and the subsequent following of the car by the officer is only to establish a pretext. The subsequent creation of a pretext to effectuate the stop of the vehicle puts the officer and the entire system in the untenable position of encouraging the creativity of officers in forming a reason to stop a car and the loss of faith in the rule of law. This case is different from one where the officer has a suspicion and then follows the car to effectuate a stop using the pretext of a traffic violation. This later type of case also leads to creative traffic enforcement but has been condoned."
 {¶ 16} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v.Fanning (1982), 1 Ohio St.3d 19, 437 N.E .2d 583; State v. Klein (1991),73 Ohio App.3d 486, *Page 6 597 N.E.2d 1141; State v. Guysinger (1993), 86 Ohio App.3d 592,621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993), 86 Ohio App.3d 37,619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994),95 Ohio App.3d 93, 641 N.E.2d 1172; State v. Claytor (1993), 85 Ohio App .3d 623, 620 N.E.2d 906; Guysinger, supra. As the United States Supreme Court held in Ornelas v. U.S., (1996), 517 U.S. 690, 116 S.Ct. 1657, " . . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 17} The State challenges the trial court's ruling arguing the trial court applied an incorrect legal standard. The State relies on the United States Supreme Court decision in Whren v. United States (1996),517 U.S. 806, and the Ohio Supreme Court decision in City of Dayton v.Erickson (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091.
 {¶ 18} In Whren, vice-squad officers became suspicious upon passing a dark Pathfinder truck with temporary license plates and youthful occupants waiting at a stop sign, the driver looking down into the lap of the passenger at his right. The truck remained stopped at the intersection for what seemed an unusually long time-more than *Page 7 
20 seconds. When the police car executed a U-turn in order to head back toward the truck, the Pathfinder turned suddenly to its right, without signaling, and sped off at an "unreasonable" speed. The policemen followed, and in a short while overtook the Pathfinder when it stopped behind other traffic at a red light. One officer stepped out and approached the driver's door, immediately observing two large plastic bags of what appeared to be crack cocaine in Whren's hands. Whren was arrested, and several quantities of several types of illegal drugs were retrieved from the vehicle. Whren challenged the admissibility of the evidence arguing the stop and resulting seizure were illegal. The United States Supreme Court held that:
 {¶ 19} "The temporary detention of a motorist upon probable cause to believe that he has violated the traffic laws does not violate theFourth Amendment's prohibition against unreasonable seizures, even if a reasonable officer would not have stopped the motorist absent some additional law enforcement objective."
 {¶ 20} Less than one month later, the Ohio Supreme Court reached a similar decision in the Erickson case. In Erickson, supra, the court held:
 {¶ 21} "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity."
 {¶ 22} The Erickson Court relied on the Sixth Circuit Court of Appeals decision in United States v. Ferguson (C.A. 6, 193), 8 F.3d 385. InFerguson, a police officer in a marked cruiser was speaking with a security guard in a motel parking lot when the *Page 8 
officer observed Cecil Ferguson drive into the parking lot in a Lincoln automobile. Ferguson's car was followed by a Ford automobile driven by Leonard Lester. Ferguson got out of the Lincoln and walked toward the back of the parking lot. When the police officer went to leave the parking lot, he observed Lester, who was still seated in the Ford, lie down across the front seat of the vehicle in an apparent attempt to hide. Having become suspicious of the situation, the officer parked his cruiser across the street and continued to observe the two men. Eventually, Ferguson got into the Ford with Lester, drove to a different spot in the parking lot, and went into a motel room. Ferguson left the room several minutes later and got back into the Ford with Lester. The two men then drove to Ferguson's Lincoln, removed a briefcase from the Lincoln, and drove the Ford back to the motel room. Ferguson entered the motel room carrying the briefcase and then emerged from the room with the briefcase still in hand. The two men then drove out of the parking lot in the Ford automobile, leaving the Lincoln behind.
 {¶ 23} The police officer followed the Ford until he noticed that there was no visible license plate on the vehicle-a violation of a city traffic ordinance. Thus, the officer stopped the Ford automobile and, among other things, questioned Lester (the driver) concerning the events at the motel. Lester was never cited for or questioned about the minor traffic offense. However, Ferguson was arrested when the officer noticed a firearm on the front seat of the vehicle. In searching the vehicle and the briefcase incident to Ferguson's arrest, police found cocaine and other evidence of drug trafficking. Accordingly, Ferguson was indicted for the federal offenses of drug trafficking and possession of a firearm during and in relation to a drug trafficking crime.
 {¶ 24} Ferguson moved to suppress the evidence obtained during the traffic stop, claiming that the stop was pretextual and thus illegal. At a hearing on the motion, the police officer testified that the primary reason he had stopped the vehicle was because of Ferguson and Lester's suspicious activity at the motel. However, the officer also testified that he had stopped the vehicle for a license plate violation. Following the hearing, the federal district court denied the motion to suppress. Thereafter, Ferguson pled guilty to the drug charge while reserving his right to appeal the denial of the motion to suppress. On appeal, a panel of the United States Court of Appeals for the Sixth Circuit reversed Ferguson's conviction and vacated his sentence, finding that the traffic stop had been pretextual and, thus, unlawful. However, the Sixth Circuit vacated the panel's decision in order to address, en banc, the following question: "Where an officer has probable cause to make a traffic stop, and also has motivations that are unrelated to the traffic stop such as an intent to investigate suspicious activity, may the stop be deemed unconstitutional because it is pretextual?" Ferguson, supra,8 F.3d at 387.
 {¶ 25} "The Sixth Circuit, sitting en banc, affirmed the district court's decision denying the motion to suppress, finding the traffic stop was not violative of the Fourth Amendment because the police officer had probable cause to stop Ferguson and Lester based on the minor traffic violation of driving without a visible license plate.Id., 8 F.3d at 391-393. In so holding, the Sixth Circuit stated, in part:
 {¶ 26} "We address today only the issue of whether a traffic stop, which is supported by probable cause but motivated-at least in part-by suspicions inadequate to support a stop, may be held to be unconstitutional because it is pretextual. We find that neither theSmith test [United States v. Smith, supra, 799 F.2d 704] of whether a *Page 9 
reasonable officer would have stopped the car for a traffic violation but for the invalid motive (or its variations as found in the pretextual stop cases decided in this Circuit), nor the language of the standard set out by other circuits of whether the police officer could have stopped the car for a traffic violation is satisfactory in determining this issue. At least insofar as the `would' test might be applied to the circumstances of a stop based upon probable cause, we find it difficult to distinguish, for example, between the officer's subjective intent and the `objective evidence' of the officer's actual interest in investigating the kind of offense for which he made the stop. * * * As for the `could' test, as we have indicated, no circuit adopting that test has expressly said that a stop can be justified merely by an after-the-stop determination that the officer theoretically could have stopped the car for a traffic violation, although he did not notice at the time of the stop that a violation had occurred. However, in our view, some of the language utilized by the courts that subscribe to the `could' test is sufficiently imprecise to leave it susceptible of such a reading.
 {¶ 27} "We hold that so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate theFourth Amendment. * * * We focus not on whether a reasonable officer `would' have stopped the suspect (even though he had probable cause to believe that a traffic violation had occurred), or whether any officer `could' have stopped the suspect (because a traffic violation had in fact occurred), but on whether this particular officer in fact had probable cause to believe that a traffic offense had occurred, regardless of whether this was the only basis or merely one basis for the stop. The stop is reasonable if there was probable cause, and it is irrelevant what else the officer knew *Page 10 
or suspected about the traffic violator at the time of the stop. It is also irrelevant whether the stop in question is sufficiently ordinary or routine according to the general practice of the police department or the particular officer making the stop.
 {¶ 28} "We note that this probable cause determination, like all probable cause determinations, is fact-dependent and will turn on what the officer knew at the time he made the stop. Under this test, it is clear that the courts may not determine whether there was probable cause by looking at events that occurred after the stop. * * * [I]f the facts known to the officer at the time of the stop were sufficient to constitute probable cause to believe that a traffic violation had occurred, a reviewing court may not look at the officer's ordinary routine, or his conduct or conversations that occurred before or after the stop to invalidate the stop as pretextual.
 {¶ 29} "We believe that by using this standard, we will better achieve the objective assessment of the officer's actions required by the [United States] Supreme Court. * * * We also will avoid some of the problems inherent in the `would' and `could' tests. By adopting this standard, we make explicit that which was simply an inference under our prior cases: traffic stops based on probable cause, even if other motivations existed, are not illegal.
 {¶ 30} "We accomplish several things by holding that a traffic stop, supported by probable cause, of a vehicle as to which the officer also has suspicions of more nefarious activity, is not unreasonable because it is based at least in part upon other motivations. We ensure that the validity of such stops is not subject to the vagaries of police departments' policies and procedures concerning the kinds of traffic offenses of which they ordinarily do or do not take note. We ensure as well that those who are *Page 11 
engaged in more nefarious activity are not insulated from criminal liability for those activities simply because a judge determines that the police officer who executed the traffic stop, had he been the mythical reasonable officer, would not have stopped them for the traffic offense that they in fact committed. We ensure that law enforcement officers who see actual violations of the law, even minor ones, are not left to ponder whether their actions in enforcing the law are appropriate. Finally, we ensure that the courts leave to the legislatures the job of determining what traffic laws police officers are authorized to enforce and when they are authorized to enforce them."Ferguson, supra, 8 F.3d at 391-392. (Emphasis added).
 {¶ 31} In State v. Allison, Stark App. No. 2006-CA-00008,2006-Ohio-5550, this Court relied upon Erickson, supra, in determining the issue presented sub judice.
 {¶ 32} In Allison, Sgt. Dittmore and Alcohol, Tobacco, Firearms and Explosives (ATF) Agent Thomas A. Hopkins were operating as a gang task force unit. The unit had received reports from a confidential informant drugs were being sold in the vicinity of Skyline Terrace Apartments and specifically the 921 building on Alan Page Drive, Canton, Ohio. The drugs were being sold by an individual driving a white car believed to be a Chevrolet Caprice. As a result of the information, Dittmore and Hopkins were conducting surveillance in the area.
 {¶ 33} The officers observed a white Chevrolet Impala by the 921 building with two occupants in it. The car left the vicinity of the building traveling on Alan Page Drive, then north on Cherry Avenue, then west on 11th Street. Dittmore and Hopkins followed the white car in their unmarked police car and observed the driver of the white car make a turn from Cherry onto 11th Street without signaling. *Page 12 
 {¶ 34} Upon observing the traffic violation, Dittmore and Hopkins requested that a marked police cruiser perform the traffic stop. Police Officer Overdorf, in a marked police cruiser, was dispatched to the scene and made the traffic stop.
 {¶ 35} Dittmore approached the driver of the vehicle and learned it was Allison. Dittmore learned Allison was the registered owner of the vehicle. Hopkins approached the passenger side of the white car. The passenger rolled his window down. When asked for identification, he indicated he had none and that he had just "got out of prison for trafficking in marijuana, and that he was currently on parole." Hopkins learned that his name was John Cameron.
 {¶ 36} Hopkins noticed the car "reeked" of marijuana. Overdorf noticed the smell of marijuana as well. While Hopkins was talking with Cameron, he also noticed some green vegetable matter which he believed to be marijuana sprinkled around the console of the car. Hopkins also saw the corner of a large Ziploc freezer bag sticking out of the center console. Hopkins also saw stuffed down under the seat between the front passenger door and the seat what looked like a black leather bag. Thinking that the bag may have contained a gun, Hopkins opened the door and had Cameron step out of the car. Likewise, Dittmore had Allison, the driver, step out of the car. Both Cameron and Allison were patted down by the officers. Hopkins observed a bag of marijuana and a scale in the center console. Hopkins pulled what he thought was the leather bag from under the seat to determine if it was a weapon. Hopkins then observed several large bags of marijuana under the seat.
 {¶ 37} Allison and Cameron were arrested and the car was inventoried before being towed. The scales and 498.92 grams of marijuana were confiscated. The *Page 13 
marijuana was found in plastic bags under the driver's seat, the front passenger seat and the center console.
 {¶ 38} This Court, on appeal from the denial of Allison's motion to suppress, held:
 {¶ 39} "Regardless of the reason why the officers were initially following Appellant, the stop was not effectuated until the officers observed Appellant violate traffic laws. A stop of a vehicle based on probable cause that a traffic violation has occurred is not unreasonable under the Fourth Amendment, regardless of any ulterior motive the police may have for such stop. Dayton v. Erickson (1996), 76 Ohio St.3d 3;Whren v. United States (1996), 517 U.S. 806."
 {¶ 40} Based upon the binding precedent set forth above, we find the trial court erred as a matter of law in granting Appellee's motion to suppress. Accordingly, the June 21, 2007 Judgment Entry of the Stark County Court of Common Pleas is reversed, and the matter remanded for further proceedings consistent with the law and this opinion. *Page 14 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the June 21, 2007 Judgment Entry of the Stark County Court of Common Pleas is reversed, and the matter remanded for further proceedings consistent with the law and our opinion. Costs assessed to Appellee.
[1] The traffic code of both the State of Ohio and the City of Canton require a signal of intention to turn "be given continuously during not less than the last one hundred feet traveled by the vehicle . . . before turning." O.R.C. 4511.39(A); Canton Ordinance 331.14(a).
[2] Upon review of Officer Dittmore's testimony he states he observed Appellant commit a traffic violation by not using a signal "within 200 feet of the change of course turn." Defendant-appellee does not contend in his brief to this Court that he did not commit a technical violation of the statute. Though Officer Dittmore misstates the required distance requirement of the statute as being 200 feet, as opposed to 100 feet, his testimony renders the misstatement inconsequential as the testimony clearly establishes Officer Dittmore observed the vehicle beginning to turn before activating the signal, as required by the statute.
[3] See Footnote 2, p. 3. *Page 1