NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0872n.06
Filed: October 25, 2005

No(s) 04-5975/5976

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| **CHADWICK DANIEL DYCUS;** | ) | **O P I N I O N** |
| **SAMUEL CLAY SIKES,** | ) | |
| | ) | |
| | ) | |
| *Defendants-Appellants*. | ) | |

**BEFORE:**    **COLE, ROGERS, and McKEAGUE, Circuit Judges**.

**R. GUY COLE, JR., Circuit Judge.**  Appellants Chadwick Daniel Dycus and Samuel Clay

Sikes each pleaded guilty to being a felon in possession of a firearm arising out of their arrest

following law enforcement's stop of a vehicle in which they were passengers.  Sikes appeals the

district court's denial of his motion to suppress evidence.  Sikes also appeals the district court's

enhancement of his sentence as an improper application of U.S.S.G. § 2K2.1(b)(5).  Dycus appeals

only his sentence as being unconstitutional under *United States v. Booker*, --- U.S. --- 124 S.Ct. 738,

769 (2005).  For the following reasons, we **AFFIRM** the conviction and sentence of Sikes, and

**VACATE** Dycus's sentence and **REMAND** for resentencing in accordance with this opinion.

**I.**

On February 6, 2003, at approximately 1:00 a.m., Officers Jason Williams and Tim Dolack of the Milan, Tennessee Police Department were on patrol in their squad car when they observed a vehicle driving in the opposite direction. Officer Dolack was unable to determine if the oncoming vehicle had a license plate because there was no illumination in the place where the plate is to be displayed. Officer Williams made a u-turn and, likewise, was unable to determine if the vehicle had a license plate. Williams then accelerated to catch up to the vehicle and activated his emergency blue lights to signal the vehicle to stop. Williams testified that, after his lights were activated, and from a distance of approximately fifteen to twenty yards, he could read the vehicle's license plate, at which time he verified ownership of the vehicle with the dispatcher as the vehicle came to a stop.

The driver of the vehicle was Susan McElroy, with Dycus in the front passenger seat and Sikes in the rear seat. As Officers Williams and Dolack approached the vehicle, they observed that Sikes was in possession of a rifle. The officers also observed a semi-automatic pistol on the right rear passenger floorboard. The officers asked Sikes and Dycus to exit the vehicle. The officers frisked Sikes and Dycus, at which point Dycus voluntarily admitted to possessing a rifle cartridge that matched the caliber of the rifle observed in the backseat of the vehicle. The officers then told McElroy to exit the vehicle, and she admitted to possessing a small bag of marijuana. Both Sikes and Dycus admitted to the officers that they were convicted felons. The officers thereupon advised Sikes and Dycus of their *Miranda* rights and placed them under arrest. The officers searched the vehicle and found over 12 grams of methamphetamine, 42.7 grams of marijuana, and several other drug tablets.

On December 15, 2003, a federal grand jury indicted Dycus with being a felon in possession of a firearm and ammunition, and indicted Sikes with being a felon in possession of a firearm. Sikes filed a motion to suppress the evidence obtained during the traffic stop. The district court, in denying Sikes's motion, found that the officers had a good faith belief that probable cause existed to stop the vehicle because of its missing license plate light, and also found that Sikes did not have standing to contest the seizure of the evidence inside the car, despite the fact that he may have had standing to contest the actual vehicle stop.

Sikes pleaded guilty to possession of a firearm, reserving the right to appeal the district court's denial of his motion to suppress. Dycus pleaded guilty as well.

The district court enhanced the base offense level for Dycus and Sikes, finding that, in addition to the underlying felon-in-possession charges, they had used or possessed a firearm in connection with the possession of drugs and drug paraphernalia in the car. Sikes was sentenced to 84 months of imprisonment and Dycus was sentenced to 120 months of imprisonment.

## II.

We review *de novo* whether a defendant has standing under the Fourth Amendment to assert the exclusionary rule. *United States v. Smith*, 263 F.3d 581, 582 (6th Cir. 2001). We review the district court's conclusions of law *de novo*. *Id.* at 581.

We review *de novo* a district court's interpretation of the United States Sentencing Guidelines. *United States v. Hazelwood*, 398 F.3d 792, 795 (6th Cir. 2005).

**III.**

The right to be free from unreasonable searches and seizures is a personal right which may not be vicariously asserted. *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978). Accordingly, a defendant may only seek to suppress evidence under the exclusionary rule where that defendant's legitimate privacy interest under the Fourth Amendment has been violated, or, as the parties have described it, the defendant has standing. *Id.* at 134.

The district court concluded that Sikes, as a passenger of the vehicle, did not have standing to challenge the search of the vehicle. On appeal, Sikes explains that he is not challenging the search of the vehicle directly; rather, he claims standing to challenge the constitutionality of the initial stop of the vehicle. He argues, and the government concedes, that if the initial stop was unconstitutional then any resulting evidence that flows from that stop should be suppressed. *See Delaware v. Proust*, 440 U.S. 648 (1978) (noting that each occupant in a vehicle has an interest in freedom from random, unauthorized, investigatory seizures); *United States v. Richardson*, 385 F.3d 625, 629 (6th Cir. 2004) ("The primary interests that the Fourth Amendment protects include an interest in freedom of movement and insulation from the fear and anxiety produced by unlawful seizure. In the traffic stop scenario, these interests are personal to all occupants of the vehicle that is detained.").

In determining whether probable cause exists to effectuate a traffic stop, we only examine "whether this particular officer in fact had probable cause to believe that a traffic offense had occurred" and not whether a reasonable police officer would have actually stopped the vehicle. *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993). To establish probable cause, the

Government needs to show "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion" that there is a "probability or substantial chance of criminal activity." *Id.* When analyzing whether a traffic stop is reasonable, we must undertake "an objective assessment of [the] officer's actions in light of the facts and circumstances then known to him," *id.* at 388 (quoting *Scott v. United States*, 436 U.S. 128, 137 (1978)), rather than the good faith standard the district court applied.

Sikes argues that probable cause did not exist to stop the vehicle because Tennessee law does not require single-motor vehicles to have illuminated license plates. However, Tennessee law in effect at the time of the stop provided that "[e]very registration plate shall at all times be securely fastened. . . *in a place and position to be clearly visible*." Tenn. Code Ann. § 55-4-110(b) (2003) (emphasis added). At least one Tennessee court has analyzed this provision in a relevant case. *See State v. Matthews*, No. M2001-00754-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 765 (Tenn. Crim. App. Sept. 10, 2002). In *Matthews*, at approximately 7:00 p.m. in mid-September, a police officer observed a motor vehicle without a light illuminating the license plate. *Id.* at *2. The police officer could not determine if the vehicle had a license plate. *Id.* The officer proceeded to follow the vehicle. *Id.* He then saw there was a license plate, and radioed in the plate number immediately prior to stopping the car. *Id.* Upon stopping the vehicle, the officer smelled alcohol on Matthews's breath, observed a half-full open can of beer in the car, and determined that Matthews was driving on a revoked license. *Id.* at *3.

At a suppression hearing, the trial court determined the stop was reasonable because Matthews had an obligation to make his license plate clearly visible at all times under T.C.A. § 55-4-

110(b) despite the fact that Matthews was not legally required to have his headlights on and his headlight switch controlled the license plate light. *Id*. at \*3–4.

The Tennessee Court of Criminal Appeals, in examining Matthews's challenge to the denial of his suppression motion, determined that, while the legislature did not require headlights to be on at the time of day that his vehicle was stopped, the legislature did intend that "license plates be clearly visible at all times." *Id*. at \*8. In affirming the trial court's denial of Matthews's motion, the appellate court concluded that, even though the headlight switch controlled the license plate light and Matthews was not legally required to have his headlights on, this "unfortunate design feature" did not excuse Matthews's failure to keep his plate clearly visible at all times. *Id*. at \*8–9.

The facts in *Matthews* are similar to those before us. The police officer in each case pursued a vehicle because the officer could not see if the suspect vehicle had a license plate. In each case, when the police officer got closer to the suspect vehicle, the police officer was able to determine that the vehicle had a license plate and was able to read it. Similarly, in each case, the officer was able to radio in the license plate number before completing the traffic stop. In each case the stop was commenced because, initially, the existence of a license plate was not immediately verifiable.

In *Matthews*, it was irrelevant to the court that the officer could see the license plate when he got closer to the vehicle. The fact that the license plate was not clearly displayed as required under § 55-4-110(b) provided probable cause for the police officer to stop the vehicle.

In the instant case, the uncontroverted evidence is that Officers Williams and Dolack pursued defendants' vehicle because they could not determine if the vehicle had a license plate. There is no dispute that the license plate was not illuminated and, as a result, the police officers could not clearly

see if the vehicle in fact had a license plate until they got within fifteen to twenty yards of the vehicle. Section 55-4-110(b) requires that a motorist clearly display his registration plates, and the failure to do so by McElroy provided an objective basis for the officers to effectuate the stop of the vehicle in which defendants were riding. Accordingly, we affirm the district court's finding that probable cause existed for the stop of McElroy's vehicle.

## IV.

Sikes appeals the district court's enhancement of his sentence under § 2K2.1(b)(5) of the sentencing guidelines.[1] U.S.S.G § 2K2.1(b)(5) provides that, "if the defendant used or possessed any firearm or ammunition in connection with another felony offense" the offense level shall be increased by four levels.

The district court imposed an enhancement under § 2K2.1(b)(5) because it found that Sikes had used or possessed a firearm in connection with another felony offense; specifically that, in addition to the underlying felon-in-possession charge, Sikes had used or possessed a firearm in connection with the possession of drugs and drug paraphernalia in the car — felonies for which the state had charged Sikes in another proceeding. Sikes objected to this enhancement arguing that the district court should not use this drug charge as "another felony offense" because it was not a separate incident from the underlying crime.

We have had the opportunity to visit enhancements under § 2K2.1(b)(5). *See United States v. Sanders*, 162 F.3d 396 (6th Cir. 1998). In *Sanders*, we held:

---

[1] Unlike Dycus, Sikes does not appeal his sentence under *Booker*. Had Sikes so appealed, it is likely that we would reach the same conclusion as we do for Dycus, i.e. remanding in light of *Booker*.

> [a] logical reading of the § 2K2.1(b)(5) Guideline term "another felony offense" would at least require, as a condition precedent to the application of a major four level guideline enhancement, a finding of a separation of time between the offense of conviction and the other felony offense *or a distinction of conduct* between that occurring in the offense of conviction and the other felony offense.

*Id*. at 400 (emphasis added); *see also United States v. Hurst*, 228 F.3d 751, 763 (6th Cir. 2000) (same).

The district court, in enhancing Sikes's sentence, correctly held that the conduct of being a felon in possession of a gun and the conduct of possessing drugs are distinct, because Sikes could have possessed the drugs without possessing a gun. Section 2K2.1(b)(5)'s language regarding "another felony offense" does not mean that the felony offense used as a basis for the enhancement must arise from an incident separate from the underlying crime. So long as the conduct was different, one incident will suffice. *Compare Sanders*, 162 F.3d at 399 (reversing enhancement where the defendant burglarized a pawn shop where he stole firearms and instantly became a felon in possession, because there was only one offense which resulted in the defendant's possession of the firearms), *with United States v. Hardin*, 248 F.3d 489, 499–501 (6th Cir. 2001) (affirming enhancement where the defendant was found with possession of cocaine and possession of a firearm).

Accordingly, we affirm the district court's enhancement of Sikes's sentence under § 2K2.1(b)(5).

**V.**

The district court found that Dycus had a base offense level of twenty-four for possessing a firearm after sustaining two prior convictions. The district court also enhanced Dycus's sentence under § 2K2.1(b)(5).

During his sentencing hearing, Dycus objected to the sentencing enhancements in general, arguing that, under *Blakely v. Washington*, 542 U.S. 296 (2004), the Sentencing Guidelines are unconstitutional. He also objected to the enhancement under § 2K2.1(b)(5).

Dycus first argues that the district court violated his Sixth Amendment rights by finding that he had two prior convictions because the fact of his prior convictions was not proven to a jury beyond a reasonable doubt. However, a district court may judicially find the fact of a prior conviction. *Booker*, 125 S.Ct. at 756 ("Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the minimum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to the jury beyond a reasonable doubt."); *see also Almendarez-Torres v. United States*, 523 U.S. 224, 247 (1998) (recognizing that a prior conviction as a sentencing factor could increase the defendant's punishment while not being an element of the offense). Despite the Supreme Court's indication in *Shepard v. United States*, 125 S.Ct. 1254, 1263 (2005), that a judge may not find a prior conviction based on certain types of non-"judicial record" or comparable evidence, *Almendarez-Torres* controls here. *See United States v. Bradley*, 400 F.3d 459, 462 (6th Cir. 2005). There is no indication here that the district court found Dycus's prior convictions based on evidence unacceptable under *Shepard*. Therefore, Dycus's argument fails.

Dycus also argues that the district court violated his Sixth Amendment rights by increasing his sentence on the basis of facts not found by the jury, namely the drug possession as another felony offense. Under *Booker*, the United States Sentencing Guidelines are no longer mandatory, but advisory. The district court therefore erred in sentencing under a mandatory scheme. *Booker*, 125 S.Ct. at 766–69. Consequently, we vacate Dycus's sentence and remand for resentencing consistent with this opinion.

## VI.

For the foregoing reasons, we hereby **AFFIRM** Sikes's conviction and sentencing, and **VACATE** Dycus's sentence and **REMAND** his case for resentencing.