Ivy Joe Clark and Vicky Clark have filed "Plaintiffs' Answer in Opposition to Petition for Rehearing by Tennessee Farmers Insurance Companies and Motion to Declare Petition for Rehearing Frivolous." Rule 39(d) of the Tennessee Rules of Civil Procedure provides that no answer to the petition shall be permitted unless requested by the Court. This Court did not request an answer to the petition for rehearing. The motion to declare the petition for rehearing frivolous is denied. **IT IS SO ORDERED**.

## STATE of Tennessee

### v.

## Roger L. HUNT.

Court of Criminal Appeals of Tennessee, at Nashville.

Assigned on Briefs at Knoxville
Dec. 16, 2008.

April 17, 2009.

Claudia S. Jack, District Public Defender, and Robert H. Stovall, Jr., Assistant Public Defender, for the appellant, Roger L. Hunt.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; T. Michel Bottoms, District Attorney General; and Joel Douglas Dicus, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA McGEE OGLE, JJ., joined.

The defendant, Roger L. Hunt, pled guilty to third offense driving under the influence, possession of drug paraphernalia, and misdemeanor possession of a Schedule II controlled substance, after the trial court denied his motion to suppress. The defendant's plea agreement preserved a certified question of law regarding the legality of the police stop before his arrest, which was based upon the defendant's not

having a light illuminating his license plate. Upon consideration of the certified question, we hold that the trial court erred in denying the motion to suppress. We reverse the judgments of the trial court and vacate the convictions.

At the suppression hearing, Deputy Clifford Adams of the Wayne County Sheriff's Department testified that he was on duty on July 12, 2007, when he saw a car operating on a roadway at 11:39 p.m. without a "tag light." He said he was unable to read the license plate from where he was parked and began following the car. He said no street lights were in the area. He said that because he was still unable to read the license plate from a safe distance, he initiated a traffic stop. He stated that he was not able to read the license plate until after he turned on his blue lights and got closer as the defendant was slowing down for the stop. He said the license plate was not "caked with dirt or anything." As a result of the stop, the defendant was charged with driving under the influence, drug possession, and possession of drug paraphernalia.

The trial court denied the defendant's motion to suppress the evidence. The court accredited Deputy Adams' testimony that he was unable to read the license plate "until he got right up behind it." The defendant then pled guilty and properly preserved a dispositive certified question of law. *See* Tenn. R.Crim. P. 37(b)(2); *State v. Preston,* 759 S.W.2d 647 (Tenn. 1988). The question is, "Whether the trial court erred in failing to suppress the evidence in the case on the basis that the traffic stop of the Defendant's vehicle was invalid because his license plate was not clearly visible to the officer as required under T.C.A. § 55–4–110 due to an inoperable tag light."

 The defendant argues that Deputy Adams' warrantless stop of the defendant was not based upon reasonable suspicion that a crime was being committed. He argues that the statute does not require an operating tag light above a license plate and that the testimony of Deputy Adams established only that his license plate was "not clear" and without reasonable suspicion that a statute had been violated. The State responds that Deputy Adams had reasonable suspicion or probable cause to stop the defendant because the defendant violated the statute by failing to have his license plate clearly displayed.

 A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. *State v. Odom,* 928 S.W.2d 18, 23 (Tenn.1996); *State v. Jones,* 802 S.W.2d 221, 223 (Tenn.Crim.App.1990). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom,* 928 S.W.2d at 23. The application of the law to the facts as determined by the trial court is a question of law which we review de novo on appeal. *State v. Yeargan,* 958 S.W.2d 626, 629 (Tenn.1997).

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, and "Article 1, Section 7 of the Tennessee Constitution is identical in intent and purpose with the Fourth Amendment." *State v. Downey,* 945 S.W.2d 102, 106 (Tenn.1997) (citation omitted). In *State v. Williams,* 185 S.W.3d 311, 315 (Tenn.2006), our supreme court outlined the three types of encounters between the authorities and citizens and defined the applicable legal standard for each:

Not all contact between police officers and citizens involves the seizure of a

person under the Fourth Amendment of the United States Constitution or Article I, section 7 of the Tennessee Constitution. Courts have recognized three distinct types of police-citizen interactions: (1) a full scale arrest which must be supported by probable cause, *see United States v. Watson*, 423 U.S. 411, 424, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); (2) a brief investigatory detention which must be supported by reasonable suspicion of criminal activity, *see Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); and (3) a brief "consensual" police-citizen encounter which requires no objective justification, *see Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). This last category includes community caretaking or public safety functions. *See Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *State v. Hawkins*, 969 S.W.2d 936, 939 (Tenn. Crim.App.1997).

Reasonable suspicion, the standard applicable here, "is a particularized and objective basis for suspecting the subject of a stop of criminal activity[.]" *State v. Binette*, 33 S.W.3d 215, 218 (Tenn.2000) (citing *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). It is determined based upon the totality of the circumstances of the encounter. *Id.* (citing *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)).

As a preliminary matter, we must consider whether the defendant was committing an offense for which the officer could stop him if he had reasonable suspicion of such. A pertinent section of the Code provides:

Every registration plate shall at all times be securely fastened in a horizontal position to the vehicle for which it is issued so to prevent the plate from swinging and at a height of not less than twelve inches (12″) from the ground, measuring from the bottom of the plate, in a place and position to be clearly visible and shall be maintained free from foreign materials and in a condition to be clearly legible. No tinted materials may be placed over a license plate even if the information upon the license plate is not concealed.

T.C.A. § 55–4–110(b) (2008). The Code also provides that all motor vehicles, other than those specifically excepted, "shall be equipped with at least two (2) and not more than four (4) headlights, with at least one (1) on each side of the front of the motor vehicle" and "two (2) red tail lamps and two (2) red stoplights on the rear of the vehicle, and one (1) tail lamp and one (1) stoplight … on each side." T.C.A. § 55–9–402(a)(1), (b)(1) (2008). These lights shall be in good condition and operational. *Id.* at (c).

The defendant is correct that the Code does not explicitly require that license plates be illuminated by a tag light. Pertinent to the present case, section 55–4–110(b) requires that the license plate be "clearly visible" and "clearly legible." Thus, if a tag light were required in this situation, it would be under the auspices of section 55–4–110(b). The record reflects that Deputy Adams testified that he made the stop because the license plate was not clearly visible. He said that had the license plate been illuminated by a light, there would have been no basis for the stop. It was upon this basis that the trial court denied the motion to suppress.

We note that two previous decisions of this court involved circumstances similar to the one in the present case. In *State v. Kevin Hall*, No. E2006–01915–CCA–R3–CD, 2007 WL 2917728, Bledsoe County (Tenn.Crim.App. Oct. 5, 2007), the arresting officer received a tip regarding two

intoxicated people in a blue van and then saw a blue van with a license plate that was tied on to a ladder on the back, was not illuminated, and was "hard to see" without the headlights on the patrol car. The officer stopped the van, which the defendant was driving. He acknowledged that he did not see any erratic driving before he stopped the van. The court noted that the officer's testimony that the license plate was "hard to see" but not that he was unable to see it fell short of a "particularized and objective basis" for the stop. *Kevin Hall,* slip op. at 4 (quoting *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). The court held, though, that reasonable suspicion existed for the stop based upon the information from the citizen-informant that the defendant and his passenger were intoxicated and the officer's observation a short time later of a van matching the description given by the information. *Id.,* slip op.

In contrast, in *State v. Herman Leo Matthews,* No. M2001–00754–CCA–R3–CD, 2002 WL 31014842, Robertson County (Tenn.Crim.App. Sept. 10, 2002), the arresting officer testified that he saw a car drive past him without a license plate tag light and that he was not able to tell whether there was a license plate on the car. He said that it was "pitch black outside." He said he followed the car and was able to see a license plate and was able to read it immediately before he stopped the car. The tag was registered to a vehicle other than the one involved in the stop, although it is not clear whether the officer determined this before the stop. He said the car's tag light came on when the headlights were turned on, although the opinion does not state whether the officer testified about when he determined this fact. The defendant challenged the legality of the stop, arguing that sunset on the night in question occurred at 6:49 p.m.,

that the stop had occurred at 7:07 p.m., and that pursuant to Tennessee Code Annotated section 55–9–406(a) he was not required to turn on his car's lights until thirty minutes after sunset. The court noted that although section 55–9–406(a) did not require headlights to be on for thirty minutes after sunset, that statute also required that headlights must be on "when there is not sufficient light to render clearly discernible any person on the road at a distance of two hundred feet (200') ahead of such vehicle." *Herman Leo Matthews,* slip op. at 3 (quoting T.C.A. § 55–9–406(a)). The court noted, as well, that notwithstanding the language of section 55–9–406(a), the Code required in section 55–4–110(b) that a license plate be clearly visible at all times. The court held that the officer's stop of the defendant's car was reasonable because the defendant failed to keep his license plate visible at all times. *Id.*

■ Neither *Kevin Hall* nor *Herman Leo Matthews* addressed the fact that the Code does not explicitly require a license plate light. The result in *Kevin Hall* relied upon reasonable suspicion of criminal activity via the anonymous tip, not the officer's observations regarding the license plate. In *Herman Leo Matthews,* the court assumed without analysis that the statutory duty to keep the plate visible at all times required a tag light. We note that in *United States v. Dycus,* 151 Fed. Appx. 457 (6th Cir.2005) (unpublished), a federal district court rejected, on the basis of Tennessee law, a defendant's claim that his Fourth Amendment rights were violated when he was stopped on the basis of a Code section 55–4–110(b) violation, despite the fact that Tennessee laws do not require a license plate light. The court in *Dycus* relied on *Herman Leo Matthews* as authoritative. However, a federal court's interpretation of Tennessee law is not

binding on the courts of this state. *See, e.g., Townes v. Sunbeam Oster Co.,* 50 S.W.3d 446, 452 (Tenn.Ct.App.2001).

We do note, though, that in *United States v. McKissack,* 76 F.Supp. 2nd 836 (M.D.Tenn.1999), a federal district court held that former Code section 55–9–404, requiring a rear lamp at the end of a train of vehicles illuminating the license plate, did not apply to a single motor vehicle. The government in that case did not seek to justify the stop on the basis that section 55–9–402 implicitly required a tag light, but it argued instead that the explicit language of section 55–9–404 required such. In holding that section 55–9–404 applied by its own terms only to the last vehicle in a train of vehicles, the district court noted that other provisions of the Code, specifically section 55–9–401,–402, and –403, defined the requirements for single vehicles. The court held that the Code did not require a tag light on a single motor vehicle and that a police stop of a single motor vehicle based upon violation of section 55–9–404 was illegal. The legislature later codified this result in section 55–9–404, which now states, "This section shall not apply to a single motor vehicle as is required in § 55–9–402, but shall only apply to the last motor vehicle being drawn at the end of a train or group of motor vehicles." T.C.A. § 55–9–404(b) and Historical and Statutory Notes. We view the decision in *McKissack* and the Legislature's later codification of the court's holding preserving a distinction between the requirements of a tag light at the end of a train of vehicles, but not on a single motor vehicle to be significant.

The title of section 55–4–110 is "Display of registration plates—Manner—Penalty for violation." The section requires that a license plate be attached to a passenger vehicle, prescribes that it be securely fastened, that it be displayed in a location to be clearly visible, and that it be legible, and defines the penalty for non-compliance with the statute. Subsection (b) of the section addresses visibility and legibility of the tag. It prescribes certain parameters for display of the plate such that it shall be "in a place and position to be clearly visible" and that the tag "shall be maintained free of foreign materials and in a condition to be clearly legible." These requirements were enacted in 1953 and have not changed since. *See* 1953 Tenn. Pub. Acts p. 623. Tinted materials are likewise specifically prohibited. We interpret the provision for clear visibility to address placement of the tag and the provision for clear legibility to address obscuring or interfering with the legibility of the tag. We do not, however, believe that either of these provisions should be interpreted to place upon the owner or operator of a vehicle an affirmative duty to light the tag to enhance its visibility or legibility after dark. Had the legislature determined that such lighting was appropriate, it could have specifically provided for it. In fact, the legislature did provide such in the case of a vehicle or trailer at the end of a train of vehicles. T.C.A. § 55–9–404(a). However, as noted, single motor vehicles are specifically excluded from the requirements of that statute. *Id.* at (b). We construe the absence in the Code of a requirement mandating tag lights on single motor vehicles and its specific exception of single motor vehicles from the section requiring tag lights at the end of a train of vehicles to indicate that the legislature was not inclined to provide for such.

In resolving this issue, we have examined the laws of other jurisdictions, many of which specifically require a license plate light. *See, e.g.,* Cal. Vehicle Code § 24601; Ga.Code Ann. § 40–8–23(d); Fla. Stat. Ann. § 316.221(2); La.Rev.Stat. Ann. § 32:304(C); Mass. Gen. Laws Ann. ch. 90, § 6; Mich. Comp. Laws § 257.686(2); Tex.

Transp. Code Ann. § 547.322(f); Vt. Stat. Ann. tit. 23, § 1248(b). The fact that the legislatures of other states have required license plate lighting lends further support to our conclusion that the Tennessee statutes, absent of such provision, should not be interpreted to require such. Therefore we hold that Tennessee does not require a single vehicle to have a light to illuminate the license plate.

Turning to the facts of the present case, we hold that Deputy Adams did not have reasonable suspicion to stop the defendant. The record fails to reflect that the officer had reasonable suspicion the defendant had committed or was about to commit a crime. The trial court erred in denying the motion to suppress.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are reversed, and the defendant's convictions are vacated.